BAILEY *v.* BAILEY.

1. Receivers—Estoppel.
　　All parties of record, including bondholders, by participation in receivership proceeding for summer hotel property, are estopped to question validity of receivership, which was not auxiliary to any other action or proceeding.

2. SAME—ADMINISTRATION EXPENSES.

Bondholders, having availed themselves of possible advantage of receivership for summer hotel property in effort to save loss by keeping hotel going concern and in attempting to effect sale thereof, may not be heard to say that property is not chargeable with receiver's expenses and administration costs.

3. SAME—BENEFITS.

Administration expenses of receivers are incurred on theory that they benefit parties ultimately entitled to property.

4. SAME—ADMINISTRATION EXPENSES—SUMMER HOTEL.

Receiver's costs and expenses of administration in keeping summer hotel property going concern were properly allowed by court.

5. SAME—PRIVATE CORPORATIONS—PRESERVATION OF PROPERTY—LIENS—PRIORITY.

Although, generally, receiver's certificates may not be given priority in case of purely private corporation, yet receiver of private corporation may be authorized to issue receiver's certificates which displace prior liens, where it is necessary to raise money to preserve property.

6. SAME—OPERATING EXPENSES—PRIORITY.

Where court order authorizing receiver to borrow money and issue certificates therefor for purpose of saving loss by keeping summer hotel going concern was silent as to lien and priority over mortgage indebtedness, question of priority was left to be determined under law and facts, and in view of purpose for which money was raised and used.

7. SAME—INSURANCE—TAXES—CONTRACT PAYMENTS—PRESERVATION OF PROPERTY.

Payments by receiver of summer hotel property out of profits of operation for fire insurance, taxes, and satisfaction of title-retaining contracts on fixtures and equipment covered by mortgage on hotel property, *held*, properly given priority as expenses of preserving and protecting property.

8. SAME—AMOUNT OF FIRE INSURANCE CARRIED.

It was upon receiver to use his best judgment as to amount of fire insurance to be carried on summer hotel property which he was operating as going concern.

Appeal from Cheboygan; Sprague (Victor D.), J. Submitted January 9, 1933. (Docket No. 152, Calendar No. 36,615.) Decided March 2, 1933.

Bill by Martha Bailey against Etta Bailey for appointment of a receiver. William B. Heath was appointed receiver. William Childs and others intervened as a bondholders' protective committee. From order allowing receiver's account and establishing certain priorities, interveners appeal. Affirmed.

*Milburn & Semmes* (*Sigmund A. Robinson,* of counsel), for interveners.

*James F. Shepherd* and *George E. Nichols,* for receiver.

CLARK, J. Etta Bailey and John E. Bailey, her son, as E. R. Bailey & Son, owned and operated a summer hotel on Mullet Lake, in the county of Cheboygan. John E. Bailey died in October, 1930. His widow, the plaintiff, is a chief beneficiary under his will. During the season of 1930 the loss in conducting the hotel business was nearly $5,000. The property, then valued at $100,000, is mortgaged to Union Trust Company, trustee, to secure an issue of bonds in the sum of $37,500. Fire insurance premiums, taxes, and interest were unpaid. Sums were due on title-retaining contracts covering some fixtures or equipment of the hotel. There were liabilities to general creditors for nearly $15,000. The surviving partner was not able to manage the hotel. In December, 1930, plaintiff, the widow, filed this bill for appointment of receiver, naming Etta Bailey as defendant, apparently a friendly suit. Etta Bailey answered, admitting the bill and in effect consenting

to receivership. It is not disputed that before filing the bill the trustee was consulted and consented to and advised the receivership. William B. Heath was appointed receiver. In January, 1931, he prayed an order authorizing him to borrow money and to issue receiver's certificates in the sum of $5,000, to be first liens, subject only to prior valid liens. By order he was given authority to borrow the sum on receiver's certificates to pay taxes, insurance, expense, etc. The order is otherwise silent as to lien and priority. He borrowed $4,000 on such certificates, and used the money as ordered. At this point it appears that the bondholders under the trust mortgage became active, and were thereafter considered and treated as the mortgagees under the mortgage. General creditors proved their claims. All parties, it appears, desired the hotel to be operated during the season of 1931. The receiver refused unless the mortgagees would consent to his borrowing money and issuing certain receiver's certificates to be a first lien and prior to the mortgage and unless the possible loss of such operation be treated as an expense to be preferred over the mortgage. The mortgagees agreed with the receiver. Accordingly, and on petition and on showing the agreement, it was so ordered. The receiver issued certificates in the total sum of $2,125. The hotel was operated during the season of 1931, and a net profit of nearly $7,000 made. Certificates in the total sum of $5,125 were retired.

In and after 1931, due to collapse of real estate values, it was apparent there was nothing for general creditors, nothing for the Baileys, and insufficient to pay the mortgage debt. The mortgagees were given notice of the hearing, and were represented at hearing of the receiver's account and were

heard and made objections. Later they were permitted to intervene formally. An account of the costs and expenses of receiver's administration of sums paid in satisfaction of the title-retaining contracts, and of sums paid for taxes, insurance, etc., showed a deficiency of nearly $4,000, which was ordered paid and made a first lien over the mortgage. There has been no proceeding to foreclose the mortgage. It is a fair inference, at least, that mortgagees co-operated in an attempt to sell the property at receiver's sale, but bids were not acceptable. The mortgagees have appealed.

The receivership is not auxiliary to any other action or proceeding. It is the end and aim of this litigation. 53 C. J. p. 21. But all parties of record, by participation and conduct in the matter, are estopped to question validity, and no point in that regard is urged seriously. However, the character of the receivership is to be noted in respect of expenses of administration and of preserving assets.

We consider first administration expenses. If the mortgagees had kept out of this matter, except perhaps in respect of contest of the receiver's account, there might be force in their contention that they are liable for no part of the administration costs and expenses of the receivership. 53 C. J. p. 307. But, as stated, the bill was filed by consent. The mortgagees dealt with the receiver promptly and in an effort to save loss to themselves by keeping the hotel a going concern, and receivership was used in an attempt to effect sale of the property. As they availed themselves of any possible advantage of the receivership, they will not be heard to say that the property in the hands of the receiver is not chargeable with the receiver's expense and administration costs, even though it may result practically in a cor-

responding loss to them. Administration expenses are incurred on the theory that they benefit the parties ultimately entitled to the property. *Ciavatta v. Munn Realty Corp.,* 106 N. J. Eq. 21 (149 Atl. 809). From *Knickerbocker* v. *McKindley Coal & Mining Co.,* 172 Ill. 535 (50 N. E. 330, 64 Am. St. Rep. 54):

"When it becomes the duty of a court of equity to take property under its own charge, through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court, and not of the parties; and it is a right of the court, essential to its own efficiency in the protection of things so situated, to keep them under its control, until such expenses and allowances are paid or secured to be paid."

See, also, 53 C. J. pp. 301–307; 1 Clark on Receivers (2d Ed.), §§ 637, 639; 23 R. C. L. p. 139; *In re Smith Floral Co.,* 260 Mich. 299; *International Harvester Co.* v. *Union Irr. Co.,* 150 La. 405 (90 South. 741).

Costs and expenses of administration were allowed properly. Appellants argue:

"Distinction between power possessed by court of chancery to displace prior mortgage liens in case of receivership of railroad or public service corporation and that possessed in receivership of private corporation or individuals."

This is conceded. 23 R. C. L. p. 88.

Assuming a general rule that receiver's certificates cannot be given priority in case of a purely private corporation (40 A. L. R. 247), yet the exception to the rule is stated in note, 40 A. L. R. 251:

"According to the weight of authority the receiver of a private corporation may be authorized to issue

receivers' certificates which shall displace prior liens, where it is necessary to raise money to preserve the property."

And in *Lockport Felt Co.* v. *United Box, Board & Paper Co.,* 74 N. J. Eq. 686 (70 Atl. 980):

"The rule may be deduced that, in case of private corporations, the court may authorize its receiver to borrow money upon the faith and credit of all the property of the corporation, and authorize the issuing of securities which shall displace all prior liens and incumbrances, but only for one purpose, viz., the preservation of the property and the expenses of realizing upon it by a sale. This necessity should be imperative and paramount, and under no other circumstances can a court justify itself in attempting to undermine prior liens."

See, also, 1 Clark on Receivers (2d Ed.), § 640.

The remainder of the receiver's account was allowed as expenses of preserving and protecting the property, and we consider the matter in so far as it is questioned by brief, concluding in accordance with the exception to the rule, as above quoted, that expense, if of the particular character, was properly allowed and given priority.

Appellants contend that, as the hotel business was conducted by the receiver during the season of 1931 virtually under a contract with them by which they were responsible for loss, they should have profits applied to satisfy obligations of such operation, and this relates, as briefed, to remainder of receiver's certificates unpaid. Assuming the contention to be equitable, it does not affect the result. If the certificates of the second issue, $2,125, be regarded as paid, there would be $1,000 of the first issue unpaid. The order for such certificates did not expressly make them subject to prior liens. Had it been so

ordered, it may well be doubted that the court could by a subsequent order "confer upon the certificates gratuitously a priority of lien upon which they were neither originally authorized nor acquired." *Mercantile Trust Co.* v. *Railroad Co.,* 291 Fed. 462, 469. The order is silent except as stated in respect of priority. We think, therefore, the question of priority was left to be determined under the law and the facts, and in view of the purpose for which the money was raised and used. Acts of a receiver in preserving and protecting property are discussed in 1 Clark on Receivers (2d Ed.), § 378. Payments for fire insurance and of taxes were properly so classed. Satisfaction of the title-retaining contracts, by which property covered by the mortgage, as alleged in the bill of complaint and not denied, was saved and freed to the mortgagees is also within the class. One item of nearly $500 for increased fire insurance is criticized. Fire insurance was increased from $46,000 to $75,000. We find no opposition made by appellants to this item in the trial court. Nor are any facts developed in regard to it. It was upon the receiver to use his best judgment, and the court approved his action. On this bare record, we must decline to find the expense improper. No other matters demand discussion.

Affirmed, with costs.

McDONALD, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.