ATTICA HYDRAULIC EXCHANGE v SESLAR

Docket No. 249395. Submitted December 7, 2004, at Detroit. Decided
     December 9, 2004, at 9:05 a.m.

Attica Hydraulic Exchange and William Wildner brought an action in
     the Macomb Circuit Court against Clifford Seslar, Vitoangelo P.
     Stramaglia, and others (hereafter referred to as the Stramaglias),
     alleging breach of contract, fraud, and misrepresentation in con-
     nection with the Stramaglias' sale of real property. Plaintiffs
     obtained a judgment for over $2 million and, after trying to collect
     on the judgment, requested the appointment of a receiver. The
     court appointed R. John Umlauf, who retained John Beeding as
     counsel and listed two properties for sale with Anton, Zorn &
     Associates, real estate agents. During that time, the Department
     of Environmental Quality (DEQ) brought a suit against the
     Stramaglias and others for environmental law violations and
     common-law claims relating to eight properties, including the two
     properties listed by the receiver for sale. Before judgment in the
     case initiated by Attica and Wildner, the DEQ intervened to seek
     remediation of the contamination in the two properties and to
     have any excess proceeds of the sale of those two properties applied
     to the remediation of the contamination in the other six proper-
     ties. The receiver sought to hold Attica, Wildner, and the DEQ
     responsible for the costs of the receivership, arguing, in part, that
     the DEQ benefited from the receivership because it sought to have
     its terms for remediation imposed on the transfer of the two
     properties, the DEQ had used the receiver's attorney in the case,
     and the DEQ sought to impose and retain benefits from the
     pending sale of the properties. The DEQ argued that it should be
     responsible for no more than the actual amount of the receiver's
     time and the attorney's time that it used, and not for the full
     amount. The court, James M. Biernat, J., ordered joint and several
     liability for the expenses of the receiver and his attorney to be paid
     by the DEQ, Attica, and Wildner. The DEQ appealed.

The Court of Appeals *held*:

Generally a receiver's expenses are satisfied from the property
     within the receivership. If there are insufficient funds in the
     receivership to satisfy the receiver's expenses, the trial court is

authorized by MCR 2.662(D) to direct the parties who moved to appoint the receiver to pay the expenses. Although the DEQ did intervene after the receiver was appointed, the DEQ did not move for the appointment of the receiver. The court rule does not provide legal authority for the trial court's order that the DEQ be responsible for the receivership expenses.

Reversed.

COSTS — RECEIVERSHIPS.

Generally, a receiver's expenses, including attorney fees, are satisfied from the property within the receivership, but, if there are insufficient funds in the receivership to satisfy the receiver's expenses, the trial court is authorized by a court rule to direct the party who moved to appoint the receiver to pay the receiver's expenses; the court rule does not provide legal authority for a trial court to order that a party intervening after the appointment of the receiver be responsible for the receivership expenses (MCR 2.662[D]).

*Law Office of Gerald P. Cavellier, PLLC* (by *Gerald P. Cavellier*), for Attica Hydraulic Exchange and William Wildner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Jonathan C. Pierce*, Assistant Attorney General, for the Department of Environmental Quality.

*Dykema Gossett PLLC* (by *Alan M. Greene* and *Thomas J. Murray*) for R. John Umlauf.

*Honigman Miller Schwartz and Cohn LLP* (by *Gregory J. DeMars*) for Anton, Zorn & Associates.

Before: WHITBECK, C.J., and SAAD and TALBOT, JJ.

PER CURIAM.

### I. OVERVIEW

Intervening plaintiff Michigan Department of Environmental Quality (DEQ) appeals by leave granted the

June 9, 2003, order entered by Macomb Circuit Court Judge James M. Biernat allocating receivership expenses. On appeal, the DEQ asks this Court to set aside the trial court's order holding the DEQ jointly and severally liable for the expenses of a receivership instituted in this action to marshal and sell real property belonging to defendants, Clifford Seslar; Vitoangelo P. Stramaglia; Philip Stramaglia;[1] PMAV Enterprises, Ltd.; and Tony Anthony Complete Demolition, Inc.,[2] in order to collect on a default judgment in favor of plaintiffs, Attica Hydraulic Exchange and William Wildner. We reverse.

II. BASIC FACTS AND PROCEDURAL HISTORY

In 1998, Attica Hydraulic Exchange (Attica) and William Wildner filed a lawsuit against the Stramaglias, alleging breach of contract, fraud, and misrepresentation in connection with the Stramaglias' sale of property at 24545 21 Mile Road to Attica and Wildner and in connection with the dumping of toxic waste onto the property by the Stramaglia defendants. On March 10, 2000, Attica and Wildner obtained a judgment against the Stramaglia defendants jointly and severally for $2,255,000.[3] When Attica and Wildner encountered difficulties collecting on the judgment, they requested that a receiver be appointed. On October 18, 2000, the trial court appointed defendant R. John Umlauf as receiver to resolve all issues regarding the sale of the 21 Mile Road property. The receiver was eventually given

---

[1] Philip Stramaglia is also known as Vito Stramaglia.

[2] We will refer to these defendants collectively as the Stramaglia defendants.

[3] The Stramaglia defendants filed a claim of appeal from the judgment entered in March 2001, in Docket No. 226271. That appeal was dismissed pursuant to a stipulation of the parties.

the authority to sell two other parcels of property owned by Philip Stramaglia (the Inwood property[4] and the North River Road property[5]) to satisfy the judgment. To accomplish this task, the receiver was authorized to retain John Beeding as counsel and to sign a listing agreement with Anton, Zorn & Associates to list the property for sale. The court ordered the receiver's fees to be paid from the proceeds of the sale of the property and be considered a priority lien. The receiver, and the receiver's attorney, incurred substantial costs and expenses in attempting to clear title to the North River Road and Inwood properties because the number of encumbrances on the properties necessitated four separate actions to quiet title.

At the same time this suit was progressing through the court, the Inwood property and the North River Road property were the subjects of a suit by the Attorney General and the DEQ against various Stramaglia family members and companies.[6] In Case No. 96-5468-CZ in the Macomb Circuit Court, the DEQ alleged that these defendants violated Michigan's Natural Resources and Environmental Protection Act (NREPA)[7] and the DEQ also brought several common-law claims based on the Stramaglias' operation of nine

---

[4] This property is a parcel of approximately 191 acres at 4985 Inwood Road, west of Mound Road in Washington Township, Michigan.

[5] This property is a parcel of approximately thirteen acres of land at 24601 North River Road adjacent to the Clinton River in Mt. Clemens, Michigan.

[6] Philip Stramaglia; John Simonicini; Anthony Stramaglia; Inge Stramaglia; Michael Stramaglia; Vito Stramaglia; Peter Adamo; All-State Contracting Company; All-State Dismantling, Inc.; All-State Wrecking Company; Andiamo, Inc.; C.O.D. Crushed Concrete Company; Investment Development Company; Stramaglia Construction, Inc.; Tri-County Contractin; Tri-County Disposal Company; Tri-County Disposal & Recycling, Inc.; and Tri-County Recycling, Inc.

[7] MCL 324.101 et seq.

unlicensed solid waste disposal sites, including the North River Road and Inwood sites.

After the five-week bench trial in Case No. 96-5468-CZ, but before an opinion was issued, the DEQ moved to intervene in this action. The DEQ asserted it should be allowed to intervene to ensure that the sale or disposition of the North River Road and Inwood properties included provisions to clean up the environmental contamination from the Stramaglia defendants, to ensure that any excess proceeds from the sale of these properties be applied to clean up the environmental contamination at another six properties, which were the subject of Case No. 96-5468-CZ, and to reimburse the DEQ for the expenses of its cleanup of the ninth site. On March 21, 2001, the trial court granted the DEQ's motion to intervene, ordering that Attica and Wildner's judgment was to remain superior to all claims by the DEQ and further ordering that the receiver "shall continue acting in his capacity as per all prior orders and for the benefit of the State of Michigan."

On May 8, 2001, the trial court issued an eighty-page opinion in Case No. 96-5468-CZ finding Philip Stramaglia liable for remediating the environmental contamination at the North River Road and the Inwood properties and at six other sites. A judgment was entered on April 9, 2002, finding all defendants jointly and severally liable for all costs incurred for remedial action at each site. The trial court also ordered that any proceeds from the sale of the North River Road and Inwood properties be held in escrow and used to reimburse the DEQ's remediation costs. In addition, the trial court imposed fines of $250,000 on each defendant, for each site, and for each of three violations.

In September 2001, Philip Stramaglia filed for Chapter 7 bankruptcy with the United States Bankruptcy

Court, Eastern District, Case No. 01-58077. On March 6, 2002, the Inwood property was sold at auction to Attica and Wildner, who submitted the sole commercially reasonable bid, for $2 million to protect their judgment against the Stramaglia defendants. Also on that date, the trial court ordered the receiver to convey title to the North River Road property to Attica and Wildner for a reduction of $200,000 against the judgment.

On July 5, 2002, the receiver filed a motion arguing that because the receivership assets were under the control of the United States Bankruptcy Court and could not be sold to satisfy the expenses of the receiver,[8] the DEQ, along with Attica and Wildner, should be responsible to pay the expenses of the receivership. The receiver argued that the DEQ was responsible for the receivership fees because (1) the DEQ asserted an interest in the property that was the subject of the litigation, (2) the DEQ was aware of the existence of the receivership when it filed its motion to intervene, (3) the DEQ received notice of the work of the receivership and worked with the receiver, (4) the receiver's attorney appeared before the court in Case No. 96-5468-CZ in support of the DEQ, (5) the DEQ was aware of the existence of orders approving agreements in connection with the sale of the subject properties, (6) the DEQ did not have a receiver appointed in Case No. 96-5468-CZ, and (7) the DEQ would benefit from the work of the receiver in the marshalling and clearing title to the assets. The receiver requested that the trial court order

[8] We assume that the bankruptcy court entered an order finding that both the North River Road property and the Inwood property were part of the bankruptcy estate, because the parties all referred to the fact that these properties were no longer available to satisfy the receivership expenses, but were under the jurisdiction of the bankruptcy court. We note, however, that this order does not appear in the lower court record.

the DEQ to pay the receivership expenses and the $200,000 fee to Anton, Zorn & Associates for marketing and auctioning the Inwood Property.

The DEQ filed a response to the receiver's motion, asserting that because the DEQ did not move for the appointment of a receiver, it should not be subject to an order directing it to pay any of the receivership expenses under MCR 2.622(D). Further, the DEQ had no secured or pecuniary interest in the property to protect. The DEQ's interest was a regulatory and law enforcement interest with no entitlement to the property. The receiver's hiring of Anton, Zorn & Associates and other professionals in his quest to sell the property subject to the receivership would have occurred regardless of whether the DEQ had intervened in the action. The DEQ acknowledged that Beeding, counsel for the receiver, appeared twice in Case No. 96-5468-CZ, providing guidance to the court in that case and support for the DEQ because of his experience with the Stramaglia defendants. Finally, the DEQ argued that the receiver's claim for his expenses against the DEQ should be brought in the Court of Claims.

The motion was heard and taken under advisement by the trial court. On July 19, 2002, the receiver submitted a supplemental brief in support of his motion,[9] arguing that he and his attorney could not go unpaid and that the nonpayment of their expenses was causing hardship. The receiver asserted that the policy behind MCR 2.622—that the parties who benefited from the receivership are responsible to pay the receivership expenses where the assets of the receivership are insufficient to pay the receivership expenses—required a finding that the DEQ be responsible for the receiver-

___

[9] On July 22, 2002, plaintiffs filed a concurrence with the receiver's supplemental brief.

ship expenses. The receiver stated that the DEQ benefited from the receivership in that it (1) sought to have its terms for the remediation of the properties imposed on any transfer thereof, (2) utilized the receiver's attorney in Case No. 96-5468-CZ, and (3) sought to impose and retain benefits from the pending sale of the property by requiring any prospective purchaser to post a $4 million bond. The receiver stated that the expenses of the receiver and the receiver's attorney totaled $510,419.24, and further stated that the DEQ's portion of those expenses should be half, $225,209.62.

On July 31, 2002, the trial court issued an opinion and order denying the receiver's motion to attribute receivership expenses to the DEQ for the reason that the DEQ did not intervene in the subject lawsuit until five months after the receiver was appointed and, under the plain language of MCR 2.622(D), the DEQ was not obligated to pay the receivership expenses. In so holding, the trial court noted that to hold the DEQ responsible for the receivership expenses would be contrary to public policy and would chill the efforts of the state to regulate the environment and protect the public.

The receiver filed a motion for reconsideration and a motion for oral argument. In his motion, the receiver stated that the court made a palpable error in finding that the DEQ's interest in the property was only regulatory where the DEQ sought monetary relief in its motion to intervene because it requested that any proceeds from the sale of the Inwood property or the North River Road property be held in escrow and used to reimburse the DEQ's remediation costs. The receiver also pointed out that the judgment in Case No. 96-5468-CZ provided for civil fines to be paid by the Stramaglia defendants, which the DEQ hoped to obtain from the sale of the North River Road or Inwood

properties. The receiver stressed that the DEQ knew that any sale of the North River Road property and the Inwood property would have to be effectuated by the receiver. The receiver argued that the DEQ chose to use the preexisting receivership to reach its goal of obtaining monetary relief in connection with the civil judgment in its own matter when it could have sought similar or different relief in the other matter by way of a garnishment or writ of execution. The receiver also argued that the trial court's conclusion that public policy mitigated in favor of denying the receiver's motion to attribute receivership expenses to the DEQ constituted a palpable error where the DEQ was not seeking to regulate or protect the public in using the receiver, but was seeking to recover remediation costs from any potential sale of the property. The receiver asserted that, in fact, public policy favored granting his motion to attribute expenses. Otherwise, no receiver would be willing to accept a court appointment. Finally, the receiver stated that the receivership expenses were causing a hardship for him and his attorney. The DEQ filed a response to the motion for reconsideration, arguing that the receiver failed to demonstrate that the trial court made a palpable error in its prior ruling.

After a hearing on the receiver's motion for reconsideration, on December 20, 2002, the trial court issued an opinion and order granting the motion. The trial court concluded that because the DEQ used the receiver to achieve the relief it sought in this matter, because that relief was monetary relief, and because the DEQ admitted that the receiver's counsel assisted the DEQ in Case No. 96-5468-CZ, the DEQ was benefited by the receivership and receivership expenses would be attributed to the DEQ.

On January 24, 2003, the trial court entered an order approving the fees of $10,000 for the receiver, $450,000

for the receiver's attorney, and $10,000 for the receiver's attorney in the bankruptcy action. Attica and Wildner and the DEQ filed claims of appeal from this order in Docket Nos. 246693 and 246658. These appeals were dismissed for lack of jurisdiction because the January 24, 2003, order was not a final order appealable as of right.

On February 10, 2003, the DEQ filed a bench brief asserting that it was not legally responsible for any of the receivership expenses, but, to the extent the trial court found it responsible, the DEQ should only be obligated to pay for work that the receiver and his counsel actually performed on behalf of the DEQ's goal of remediating the Inwood and North River Road properties. The DEQ admitted that it intervened to protect its potential interest in a possible monetary judgment for environmental response costs and fines, but stated that its primary objective in intervening was to enforce environmental cleanup obligations. The DEQ attached all the billing of the receiver and his attorney since the date of the DEQ's intervention in the case and highlighted and tabbed the sections pertaining to work done for the DEQ. The total expenses tabbed and highlighted amounted to $8,432.76.

At a hearing on April 25, 2003, the trial court ruled that the DEQ was jointly and severally responsible with Attica and Wildner for the expenses of the receivership. The trial court found that, from the date of the DEQ's intervention, all the receiver's work could be viewed as being performed for the joint benefit of Attica and Wildner and the DEQ. An order was entered to this effect on June 9, 2003. Included in the order of June 9, 2003, was a provision ordering that Anton, Zorn & Associates was entitled to $200,000 for its services and this amount was the joint and several liability of Attica

and Wildner and the DEQ.[10] On September 12, 2003, the trial court granted the DEQ's request for a stay of proceedings.

On June 30, 2003, the DEQ filed both a claim of appeal (Docket No. 249396) and an application for leave to appeal (Docket No. 249395), in this Court relating to the order of June 9, 2003. Although the claim of appeal was dismissed for lack of jurisdiction because the order of June 9, 2003, was not a final order appealable as of right, this Court granted leave to appeal on October 29, 2003.

### III. SUBJECT-MATTER JURISDICTION

#### A. STANDARD OF REVIEW

We review de novo the question whether subject-matter jurisdiction exists.[11]

#### B. MCL 600.6419

The Court of Claims has exclusive jurisdiction over certain claims against the state and its subdivisions pursuant to MCL 600.6419. In pertinent part, MCL 600.6419 provides:

> (1) Except as provided in sections 6419a and 6440, the jurisdiction of the court of claims, as conferred upon it by this chapter, shall be exclusive. . . . The court has power and jurisdiction:
>
> (a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto,

---

[10] On March 28, 2003, the trial court had entered an order allowing Anton, Zorn & Associates to intervene in the action for the purpose of pursuing its claimed commission of $200,000 for the marketing of the Inwood property.

[11] *McCleese v Todd*, 232 Mich App 623, 628; 591 NW2d 375 (1998).

against the state, and any of its departments, commissions, boards, institutions, arms or agencies.

\* \* \*

(4) This chapter shall not deprive the circuit court of this state of jurisdiction over . . . proceedings for declaratory or equitable relief, or any other actions against state agencies based upon the statutes of this state in such case made and provided, which expressly confer jurisdiction thereof upon the circuit court . . . .

The Court of Claims has exclusive jurisdiction over all claims in contract and tort against the state.[12] In this case, however, there are no allegations that the DEQ committed a tort or breached a contract. The DEQ intervened in this action in which Attica and Wildner brought tort and contract claims against the Stramaglia defendants. The receiver's postjudgment pursuit of payment of his and his attorney's fees and expenses from the DEQ is not a claim under tort or contract law, but an apportionment of court costs. Therefore, the apportionment of receivership expenses does not fall within the exclusive jurisdiction of the Court of Claims and the trial court had jurisdiction, under MCL 600.6419(4), to decide this matter.

### IV. RECOVERING THE COSTS OF THE RECEIVERSHIP

#### A. STANDARD OF REVIEW

Whether the trial court had the authority to order an intervening party to pay for the costs of a receivership that it did not request is a question of law. We review de novo questions of law.[13]

---

[12] *Parkwood Ltd Dividend Housing Auth v State Housing Dev Auth*, 468 Mich 763, 772; 664 NW2d 185 (2003).

[13] See *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001).

## B. MCR 2.622(D)

In initially denying the receiver's motion to attribute receivership expenses to the DEQ in its opinion and order of July 30, 2002, the trial court stated:

> Here, the record demonstrates receiver was appointed over five months before intervening plaintiff even became a party in this case. See order dated October 18, 2000; cf. complaint of intervenor filed March 30, 2001. As such, intervening plaintiff neither moved for nor requested the appointment of receiver. Pursuant to the clear and unambiguous language of MCR 2.622(D), and contrary to receiver's assertions, the Court is convinced intervening plaintiff is not obligated to pay receivership expenses. Receiver's argument fails.
>
> Even if the Court were to rule otherwise, it is nevertheless persuaded the case law and statutes receiver relies upon are distinguishable and inapplicable to the case at bar. For example, there is no showing intervening plaintiff has any interest in the properties other than from a regulatory or law enforcement standpoint; therefore, there is no basis upon which to hold intervening plaintiff liable for receiver's expenses or attorney fees. Further, nowhere in the statutes cited by receiver does it indicate that intervening plaintiff should be held liable for those expenses and attorney fees. In any event, the Court is convinced that holding intervening plaintiff responsible for such expenses and attorney fees is contrary to public policy, and would chill the efforts of the state to regulate the environment and protect the public.

In reversing itself and granting the receiver's motion for reconsideration and in finding the DEQ responsible to pay the expenses of the receivership, the trial court pointed to the fact that the DEQ obtained a monetary judgment in Case No. 96-5468-CZ and filed a motion to intervene in this case seeking monetary relief. The trial court, on December 19, 2002, stated:

Based on the foregoing, it is clear intervening plaintiff has utilized the services of receiver in order to achieve the relief it seeks in this matter. Indeed, intervening plaintiff has admitted that receiver's counsel has "assisted" intervening plaintiff to help "keep the facts straight" in this complex matter. See hearing transcript dated July 15, 2002, p 14. Additionally, the record reflects intervening plaintiff has consulted with receiver regarding various aspects of the administration of the receivership. See hearing transcript dated July 15, 2002, p 10. Moreover, the record indicates intervening plaintiff has utilized the receivership to retain its financial interest in the event of any overage of any sales of properties. See hearing transcript dated July 15, 2002, pp 10-12.

Upon thoughtful reflection of the record, the Court is convinced reconsideration of its *Opinion and Order* issued July 30, 2002 is appropriate. It has now been made clear to the Court that intervening plaintiff has utilized the services of the receiver and has benefited from the receivership. In keeping with the rationale of *Fisk* [*v Fisk*, 333 Mich 513; 53 NW2d 356 (1952)], then, the Court is persuaded receiver has a right to be compensated for his services and expenses. Accordingly, the Court will exercise its equitable powers and attribute receivership expenses to intervening plaintiff.

After a judgment for money has been rendered, a trial court has the discretion to appoint a receiver of any property the judgment debtor has or may acquire.[14] A receiver is appointed by a circuit court under the court's equitable powers[15] to subserve the interests of all persons interested in the subject matter committed to his care.[16]

Generally, a receiver's expenses are satisfied from the property within the receivership.[17] However, if there are

---

[14] MCL 600.2926, 600.6104(4).

[15] MCL 600.2926.

[16] *State Treasurer v Abbott*, 468 Mich 143, 153 n 10; 660 NW2d 714 (2003).

[17] See MCR 2.622(D); *Fisk, supra* at 516.

insufficient funds in the receivership to satisfy the receiver's expenses, the trial court is authorized to direct the party who moved to appoint the receiver to pay them under MCR 2.622(D), which provides:

> Expenses in Certain Cases. When there are no funds in the hands of the receiver at the termination of the receivership, the court, on application of the receiver, may set the receiver's compensation and the fees of the receiver's attorney for the services rendered, and *may direct the party who moved for the appointment of the receiver* to pay these sums in addition to the necessary expenditures of the receiver. . . . [Emphasis supplied.]

This court rule gives the trial court discretion to direct the "party who moved for the appointment of the receiver" to pay the receiver's compensation and necessary expenditures. Here, Attica and Wildner, and not the DEQ, moved for the appointment of the receiver in this case. The DEQ did not intervene in the suit until after the receiver had been appointed. Therefore, MCR 2.622(D) does not provide legal authority for the trial court's order that the DEQ be responsible for the receivership expenses.

The two cases the receiver relies on in his motion to attribute receivership expenses, *Fisk* and *Bailey v Bailey*,[18] do not provide legal authority for the trial court's order. In *Fisk*, the Michigan Supreme Court addressed whether an employee of a company, who served as a receiver and ran the company along with the judgment creditor, was entitled to compensation as a receiver and who was to pay the compensation. The Michigan Supreme Court held that because the judgment creditor and judgment debtor agreed by stipulation to the appointment of the employee as receiver, the employee was entitled to compensation and the com-

---

[18] *Bailey v Bailey*, 262 Mich 215; 247 NW 160 (1933).

pensation was to come out of the assets held in the receivership. The Court stated that the primary purpose of a receivership was to preserve and protect the property involved in the controversy, and the party that ultimately establishes his right to the property thus held is the one who benefits from the property having been protected and preserved.[19]

*Fisk's* holding that a receiver is entitled to be compensated from the assets of the receivership is not directly applicable to this case, in which there are no assets in the receivership and the question is whether an intervening plaintiff who did not stipulate the appointment of the receiver can be saddled with the expenses of the receivership. The trial court apparently relied on *Fisk* for the proposition that any party that benefits from the receivership is responsible to pay the expenses of the receivership. Although *Fisk* does hold that the party who benefited from the receivership is responsible for the receivership expenses, *Fisk* defines a party who benefits as one who "ultimately establishes his right to the property . . . having been protected and preserved."[20] Under this definition, the DEQ does not qualify as a party who benefits from the receivership. The DEQ is a division of the state of Michigan that intervened in this suit to protect the environmental integrity of the property by requiring the inclusion of provisions in any disposition of the North River Road or the Inwood properties for the cleanup of the environmental contamination and, by claiming any excess proceeds from the sale of these properties to fund the cleanup of the six other properties on which the Stramaglia defendants dumped waste materials, to reim-

---

[19] *Fisk, supra* at 516.

[20] *Id.*

burse the state for its expenses in the cleanup of the ninth site. The DEQ's interest, therefore, was essentially regulatory.

Further, if the receivership had successfully cleared the title and sold the properties, the DEQ would not have gained the right to the property, but only to any "excess proceeds" after the priority claims of the receivership and Attica and Wildner. Therefore, under the definition of "beneficiary" in *Fisk*, the DEQ does not qualify as a beneficiary of the receivership so as to be responsible for the costs of the receivership.

*Bailey* is similarly unhelpful. In *Bailey*, the mortgagees to a hotel held in receivership, after consenting to allow the receiver to borrow money to keep the hotel operating, contested the charging of the property with the receivership expenses.[21] The Michigan Supreme Court held that, because the mortgagees availed themselves of a possible advantage by keeping the hotel concern going in an attempt to effect its sale, they could not contest the charging of the property with the receivership expenses. The Court held that the mortgagees could not lodge a protest because the expenses benefited the mortgagees as the parties ultimately entitled to the property.[22] Here, there is no question regarding whether charges against the North River Road and Inwood properties were permissible. The question presented is whether the trial court can order an intervening plaintiff to pay receivership expenses when that party did not request the appointment of the receiver. *Bailey* does not provide this authority.

For these reasons, we conclude that the trial court lacked the authority to order the DEQ to pay the costs

---

[21] *Bailey, supra* at 217-218.

[22] *Id.* at 219-220.

of the receivership, in whole or in part. The discretionary language in MCR 2.622(D) ("the court, on application of the receiver, may set the receiver's compensation and the fees of the receiver's attorney for the services rendered, and may direct the party who moved for the appointment of the receiver to pay these sums . . .") applies to *whether* the court decides to direct a party to pay the costs, not *whom* it may direct to pay the costs. Whom the court may direct to pay the costs is clearly stated in the plain language of the rule: "the party who moved for the appointment of the receiver . . . ." In light of this conclusion, we need not address the question whether the trial court abused its discretion in granting the receiver's motion for reconsideration.

Reversed.