*In re* RECEIVERSHIP OF 11910 SOUTH FRANCIS ROAD
(PRICE v KOSMALSKI)

Docket No. 295212. Submitted April 6, 2011, at Lansing. Decided April
12, 2011, at 9:05 a.m. Reversed, 492 Mich 208.

Nastassia Price and Erin Duffy-Price, as personal representatives of
the estate of Darryl H. Price, brought an action in the Ingham
Circuit Court to collect a judgment against Lori Jean Kosmalski
and others, seeking a lien against certain property. At plaintiffs'
request, the court, William E. Collette, J., appointed Thomas
Woods as receiver, and he took possession of the property and made
substantial repairs, but market conditions rendered the property
unsalable. Dart Bank foreclosed on the property and purchased it
at the foreclosure sale for substantially less than the appraisal
value. Unable to find a competitive buyer, Woods moved to dissolve
the receivership and sought an order requiring the bank to pay the
costs of receivership. The court placed a lien on the property for
the costs to be paid whenever the property was sold. The bank
appealed.

The Court of Appeals *held*:

A court may order a party that benefits from a receivership and
ultimately establishes a right to the property protected and
preserved by that receivership to pay the costs of the receivership,
even if the party did not consent to the receivership or become a
party until after the receiver was appointed. Thus, even though
the bank became a party after the trial court appointed Woods, it
established its right to the property and benefited from the
receivership. The trial court did not err by ordering the bank to
pay the costs.

Affirmed.

Costs — Receiverships — Liability for Costs.

A court may order a party that benefits from a receivership and
ultimately establishes a right to the property protected and
preserved by the receivership to pay the costs of the receivership,
even if the party did not consent to the receivership or become a
party until after the court appointed the receiver (MCR 2.622[D]).

*Allan Falk, P.C.* (by *Allan S. Falk*), and *Cummins Woods* (by *Thomas E. Woods*) for Thomas E. Woods.

*The Hubbard Law Firm, P.C.* (by *Peter A. Teholiz*), for Dart Bank.

Before: O'CONNELL, P.J., and K. F. KELLY and RONAYNE KRAUSE, JJ.

O'CONNELL, P.J. Intervening defendant-appellant, Dart Bank, appeals as of right the trial court's order granting receiver-appellee, Thomas Woods, a lien over certain property. The issue on appeal is whether the trial court erred by imposing the costs of the receivership on appellant by granting the lien given that appellant neither consented nor objected to the receivership. We affirm.

I. FACTS AND PROCEDURAL HISTORY

The original parties in this case stipulated to the appointment of appellee as receiver over certain property in DeWitt.[1] The receivership order authorized appellee to take immediate possession of the property in order to sell it and to make any expenditure necessary for the upkeep and repair of the property. The property required substantial repairs, totaling approximately $20,000, which appellee borrowed by authority granted in the receivership order. Market conditions rendered appellee unable to sell the property.

The receivership order also prohibited anyone with actual notice of the order from interfering with appellee's possession and management of the property. Appellant was not a party to this case at the time of the order and

---

[1] The original stipulated order appointing appellee was entered April 10, 2008. An amended order was entered on April 28, 2008.

thus did not stipulate to it. Appellant foreclosed on the property on June 5, 2008. Appellant was not aware of the receivership order before beginning the foreclosure process but learned of the order before the foreclosure sale. Specifically, appellant received a copy of the original receivership order on April 18, 2008, and does not dispute that appellee served it with a copy of the amended order on April 28, 2008. Appellant was the only bidder at the foreclosure sale and purchased the property for $169,312.50. Appellant subsequently appraised the property at $245,000. Appellee eventually filed a motion to void the foreclosure and hold appellant in contempt for violating the receivership order's prohibition on interfering with appellee's possession of the property. The trial court denied the motion but extended the redemption period to give appellee additional time to sell the property at a better price than that paid by appellant.

After determining that he could not find a buyer for any amount close to $245,000, appellee moved to dissolve the receivership and to have the trial court order appellant to pay the costs of the receivership. The trial court essentially granted this motion by placing a lien on the property to be paid whenever the property is sold. The court noted that it had ordered appellee to sell the property and that appellant did not ask the court to set that order aside. Further, the court stated that it would not be able to find receivers in the future if it did not pay them.

## II. AUTHORITY TO IMPOSE RECEIVERSHIP COSTS

Whether the trial court had authority to place a lien on the property to collect the costs of receivership is a question of law, which we review de novo on appeal. See *Attica Hydraulic Exch v Seslar*, 264 Mich App 577, 588; 691 NW2d 802 (2004).

Appellant first argues that a receiver has no greater rights than the original owner of the property,[2] citing *Gray v Lincoln Housing Trust*, 229 Mich 441, 446-447; 201 NW 489 (1924). Appellant contends that allowing appellee to recover his costs essentially grants him greater rights than the original owner would have had. However, the cited case stands for the proposition that appellee cannot destroy the bank's right to payment under the mortgage. The case does not resolve the issue at hand.[3]

Both parties cite *Bailey v Bailey*, 262 Mich 215, 219; 247 NW 160 (1933), in which our Supreme Court ruled that a mortgagee was liable for receivership expenses when the mortgagee consented to appointment of the receiver and "availed themselves of any possible advantage of the receivership." Appellant attempts to distinguish *Bailey* because it did not consent to the receivership in the present case. However, the *Bailey* Court also acknowledged that "[a]dministration expenses are incurred on the theory that they benefit the parties ultimately entitled to the property" and that " 'the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services.' " *Id.* at 220 (citation omitted). Therefore, the *Bailey* Court based its decision not only on the mortgagee's consent but also on the fact that the mortgagee benefited from the receivership.

Our Supreme Court addressed a similar issue in *Fisk v Fisk*, 333 Mich 513; 53 NW2d 356 (1952). In that case, the Court held:

---

[2] Appellant does not contest the validity of appellee's expenses. Rather, appellant contests only whether the trial court could properly place a lien on the property for those costs.

[3] *Gray* involved an attempt by a receiver to prevent a plaintiff from recovering on a breach-of-contract claim. *Gray*, 229 Mich at 444-446.

> In a case such as this, the primary purpose of a receivership is to preserve and protect the property involved in the controversy. This being so it logically follows that he who ultimately establishes his right to the property thus held is the one who benefits from the property having been protected and preserved. For this reason the general rule followed by the courts is that a receiver's compensation and the expenses necessarily incurred by him in preserving and caring for the property under the order of a court of competent jurisdiction are primarily a charge on and should be paid out of the fund or property in his hands, regardless of the ultimate outcome of the principal suit. [*Id.* at 516 (citations and quotation marks omitted).]

The Court remarked that exceptions include cases in which the trial court does not have proper jurisdiction or it was improper to appoint a receiver. *Id.* The defendant in *Fisk* agreed to the appointment of the receiver and therefore, the Court concluded, could not object to the receiver being paid by a charge against the property held by him. *Id.* at 516-517.

This Court discussed a trial court's authority to order an intervening party to pay the costs of a receivership in *Attica*, 264 Mich App at 588-594. The Court first discussed MCR 2.622(D), which allows the trial court to direct that the party who moved for appointment of the receiver pay the receiver's costs. That rule is inapplicable in this case, as it was in *Attica*, because appellant did not move for appointment of the receiver and, in fact, did not become a party until after the receiver was appointed. See *id.* at 591.

The Court then considered *Fisk*, stating:

> Although *Fisk* does hold that the party who benefited from the receivership is responsible for the receivership expenses, *Fisk* defines a party who benefits as one who "ultimately establishes his right to the property . . . having been protected and preserved." [*Id.* at 592, quoting *Fisk*, 333 Mich at 516.]

The *Attica* Court concluded that *Bailey* similarly held that mortgagees could not contest the receivership expenses when they benefited "as the parties ultimately entitled to the property." *Attica*, 264 Mich App at 593.

Appellant would read these cases as holding that any party who does not seek a receivership is not required to pay for it. It is true that the parties who were forced to pay in *Bailey* and *Fisk* each consented to the receivership, but the Court did not focus on that fact alone, as explained in *Attica*. It was also important that those parties ended up in possession of the property that had been preserved by the efforts of the receivers. Indeed, in *Attica* the key point that allowed the Department of Environmental Quality (DEQ) to avoid paying the receiver's costs was that the DEQ's interest was purely regulatory—that is, it would never take possession of the property that had been preserved by the receivership. *Id.* at 592-593. The *Attica* Court held on the basis of that fact that the DEQ did not fit *Fisk*'s definition of a party who benefits from a receivership. *Id.* at 593.

Appellant in the present case is situated similarly to the DEQ in *Attica* to the extent that it became a party only after the receiver was appointed and did not consent to the receivership. Unlike the DEQ, though, appellant ultimately established its right to the property. Therefore, under *Fisk* and *Attica*, because appellant benefited from the receivership, it may be held responsible for the receivership expenses.

Affirmed.

K. F. KELLY and RONAYNE KRAUSE, JJ., concurred with O'CONNELL, P.J.