CAVANAGH, J.
(dissenting). I respectfully dissent from the majority’s conclusion that a mortgagee only waives its rights to superior priority under MCL 600.3236 if the mortgagee expressly consents to a receivership or the reordering of priorities. Rather, I would hold that a mortgagee may also waive its superior priority rights if the mortgagee acquiesces to and benefits from the receivership.
In support of its conclusion that a receiver may only obtain superior priority in relation to a mortgagee *234 “when the mortgagee has unequivocally waived this statutory right of first priority [under MCL 600.3236],” the majority cites Bailey v Bailey, 262 Mich 215; 247 NW 160 (1933), and Fisk v Fisk, 333 Mich 513; 53 NW2d 356 (1952). Ante at 230. However, in my view, Bailey and Fisk provide that a waiver may also occur by way of acquiescence.[1]
In Bailey, a receiver was appointed for a hotel, which was subject to a mortgage. All parties involved sought to have the receiver operate the hotel during the summer of 1931, but the receiver refused unless the mortgagees consented to his borrowing money and obtaining a first lien with priority over the mortgagees. The mortgagees agreed. Subsequently, the real estate market collapsed, but the mortgagees did not seek to foreclose and instead cooperated with the receiver in his efforts to sell the property. No acceptable offers were received, however.
In determining whether the receiver held priority over the mortgagees for his costs, Bailey initially focused on the fact that the mortgagees consented to the receiver’s superior priority:
If the mortgagees had kept out of this matter, except perhaps in respect of contest of the receiver’s account, *235 there might be force in their contention that they are liable for no part of the administration costs and expenses of the receivership. But, as stated, the bill was filed by consent. [Bailey, 262 Mich at 219 (emphasis added; citation omitted).]
However, this Court also stated that even if the mortgagees had not given prior, specific consent to the receiver’s priority, their conduct would nevertheless have precluded them from seeking to obtain priority over the receiver because “[t]he mortgagees dealt with the receiver promptly and in an effort to save loss to themselves by keeping the hotel a going concern, and receivership was used in an attempt to effect sale of the property.” Id. Accordingly, because the mortgagees “availed themselves of any possible advantage of the receivership, they will not be heard to say that the property in the hands of the receiver is not chargeable with the receiver’s expense and administration costs, even though it may result practically in a corresponding loss to them.” Id. at 219-220 (emphasis added). This was so because “[administration expenses are incurred on the theory that they benefit the parties ultimately entitled to the property.” Id. at 220. Bailey was also careful to limit the scope of its holding, explaining that a court may only allow a receiver’s expenses to displace prior liens when the expenses are required to preserve the property and allow the property to become saleable. Id. at 221.
Also, in Fisk this Court considered a situation in which the parties had agreed to the appointment of receivers over the corporation at issue while the parties settled a dispute regarding who owned the corporation. This Court held that, when the primary purpose of a receivership is to preserve and protect the property involved in a controversy, “it logically follows that he who ultimately establishes his right to the property *236 thus held is the one who benefits from the property having been protected and preserved.” Fisk, 333 Mich at 516, citing Bailey, 262 Mich 215. Fisk also noted that both parties had agreed to the appointment of the receivers and, “by doing so, appellant in effect waived any complaint he might otherwise make regarding the propriety or legality of the appointment and its effect upon the question of who was to bear the receivership expenses.” Fisk, 333 Mich at 516 (citation omitted).
In my view, Bailey and Fisk indicate that although consent by the mortgagee is one method by which a receiver may obtain superior priority, acquiescence by a mortgagee is also sufficient to grant a receiver’s expenses priority over a preexisting mortgage. Bailey and Fisk supported this conclusion by reasoning that the receivership is intended to protect and preserve the property held by the receiver and because a mortgagee or an eventual owner of the receivership property benefits from the receiver’s expenditures, it is proper to impose those expenses on the party that benefits. See Bailey, 262 Mich at 219-220 (stating that because the mortgagees “availed themselves of any possible advantage of the receivership, they will not be heard to say that the property in the hands of the receiver is not chargeable with the receiver’s expense and administration costs, even though it may result practically in a corresponding loss to them”). Thus, in my view, the majority incorrectly states that acquiescence by a mortgagee with knowledge of the receivership is insufficient to provide the receiver superior priority. See ante at 228 (claiming that this interpretation would require an “extension of the rule articulated in Bailey and Fisk”), and ante at 228 (claiming that this interpretation is “wholly unsupported by our jurisprudence”). Rather, Bailey specifically supports this conclusion.
*237 Applying Bailey and Fisk to this case, I believe that, at a minimum, Dart Bank acquiesced to the receivership. Specifically, Dart never objected to the receiver’s actions, despite its knowledge of the receiver’s efforts. This Court has long recognized the inherent authority of a court of equity to appoint a receiver under appropriate circumstances, see McDonald, 351 Mich at 575-576, and Dart does not argue that the receivership in this case was improper. Moreover, the Court of Appeals has held that entities that are not parties to a receivership order but are nevertheless affected by the receivership order need not be served with notice under MCR 2.105(D), particularly when the affected entity receives actual notice of the order. In re Contempt of Cornbelt Beef Corp, 164 Mich App 114, 120; 416 NW2d 696 (1987), citing Davis v Davis, 137 Mich App 291, 293; 358 NW2d 6 (1984), and Tuller v Wayne Circuit Judge, 243 Mich 239, 243-245; 219 NW 939 (1928). Accordingly, Dart was not entitled to formal notice of the receivership.
Furthermore, although Dart was not a party to the receivership order entered on April 10, 2008, and Dart initiated a foreclosure by advertisement on April 15, 2008 — before it was aware of the receivership — Dart admitted that it had received actual notice of the receivership only three days later, on April 18, 2008. Moreover, the majority’s notation that “ ‘[m]ere knowing silence generally cannot constitute waiver,’ ” ante at 229 n 45, quoting Quality Prods & Concepts Co v Nagel Precision Inc, 469 Mich 362, 365; 666 NW2d 251 (2003), is irrelevant because Dart did not merely stand mute when it learned of the receivership. Rather, in a letter acknowledging the receivership, Dart’s attorney stated that it “would be willing to work with [the receiver] . .. in terms of arranging for a sale of the property so that this mortgage can be paid.” Also, Dart’s subsequent *238 interaction with the receiver during the year between its acknowledgement of the receivership and the sheriffs sale substantiates Dart’s willingness to work with the receiver. Additionally, during the October 14, 2009, hearing in the trial court, Dart’s attorney admitted that Dart “acquiesced to the fact that there was a receiver out there . . . .” The trial court, the receiver, and Dart agreed that the property was in terrible condition and, although the expenses of repairing it were high, they were necessary in this case. Furthermore, the receiver provided reports documenting his expenditures related to repairing the property in hopes of returning it to a saleable condition, and Dart never acted to formally challenge any specific expenditure by the receiver related to the property’s repair. Thus, in my view, Dart’s conduct was sufficient to establish that Dart had knowledge of and acquiesced to the receivership. Accordingly, in my view, Dart clearly engaged in “affirmative conduct” that was sufficient to show that Dart “waived a known right,” ante at 229 n 45, just as did the parties in Bloomfield Estates Improvement Ass’n, Inc v City of Birmingham, 479 Mich 206, 214; 737 NW2d 670 (2007); Sampeer v Boschma, 369 Mich 261, 265; 119 NW2d 607 (1963); and Smith v First United Presbyterian Church, 333 Mich 1, 11; 52 NW2d 568 (1952).
Additionally, as mortgagee, Dart benefited from the receiver’s efforts to repair, preserve, and protect the property because the repairs increased the property’s value. Therefore, the receiver’s efforts improved Dart’s chances of recovering the full amount of its mortgage when the receiver sold the property. The fact that the receiver was not able to sell the property at a suitable price does not undercut this analysis because Bailey held that the receiver’s costs take priority “even though it may result practically in a corresponding loss to [the mortgagee].” Bailey, 262 Mich at 219-220. Accordingly, *239 as stated in Bailey, Dart should not “be heard to say that the property in the hands of the receiver is not chargeable with the receiver’s expense” when the mortgagee “availed [itself] of any possible advantage of the receivership . . . Id. at 219.[2]
Finally, as the ultimate owner of the property through the foreclosure process, Dart also benefited from the receiver’s efforts to repair, preserve, and protect the property. This aspect of the case falls under Fisk’s conclusion that when the primary purpose of a receivership is to preserve and protect the property involved in a controversy, “it logically follows that he who ultimately establishes his right to the property thus held is the one who benefits from the property *240 having been protected and preserved.” Fisk, 333 Mich at 516. Accordingly, because Dart, as the eventual owner of the property, benefited from the receiver’s efforts to repair, preserve, and protect the property in that Dart received a habitable, sellable property, I would require Dart to bear the cost of that benefit.
Thus, I would affirm the judgment of the Court of Appeals because, in my view, Dart waived its statutory right to superior priority under MCL 600.3236 because it had knowledge of the receivership, acquiesced to the receivership, and benefited from the receiver’s efforts to repair, preserve, and protect the property.
Marilyn Kelly and Hathaway, JJ., concurred with Cavanagh, J.

 Waiver by acquiescence is well known in a variety of legal situations. See, e.g., Bloomfield Estates Improvement Ass’n, Inc v City of Birmingham, 479 Mich 206, 214; 737 NW2d 670 (2007) (stating that an unambiguous deed restriction is enforced as written “unless the restriction ... has been waived by acquiescence") (emphasis added); Sampeer v Boschma, 369 Mich 261, 265; 119 NW2d 607 (1963) (“If the action of the trial court was irregular, the irregularity was waived by making no objection until after the verdict was rendered.”) (emphasis added; quotation marks and citation omitted); and Smith v First United Presbyterian Church, 333 Mich 1, 11; 52 NW2d 568 (1952) (holding that when the purchaser of real property from a subdivider was vigilant in maintaining the property in accordance with the general plan, the purchaser “acquiesced in the general plan. . . and waived any right she or her grantees would have to act outside of it”) (emphasis added).

 Bailey’s discussion of the importance of who receives the benefit of a receiver’s efforts is consistent with this Court’s discussion of the issue in other opinions. For example, in Holmes v Holmes, 265 Mich 16, 18; 251 NW 360 (1933), this Court stated that imposing responsibility for the receiver’s expenses on the receivership property is appropriate when the receiver “performed valuable services” that “were beneficial” and the parties had consented to the receiver’s appointment. Likewise, in Fisk, this Court stated that
“[r]eceivers ordinarily have a right to compensation for their services and expenses, and such right is a strong equity, analogous to an obligation founded upon an implied contract, and is not dependent upon the mere arbitrary discretion of the court, if the appointment of the receiver was regular and his conduct has been free from exception. Such right of the receiver to compensation is a charge on the property or fund in receivership.” [Fisk, 333 Mich at 518 (citation omitted).]
See, also, Cohen v Cohen, 125 Mich App 206, 215; 335 NW2d 661 (1983) (upholding a receiver’s fees because the fees were not “excessive” and were “reasonable in light of the actions the receiver was required to take in order to protect the property”), and 65 Am Jur 2d, Receivers, § 220, p 777 (“The general rule is that the compensation of a receiver, where the receivership proceedings are not sought by a mortgagee, is subordinate to the lien of the mortgage, at least where the mortgagee receives no benefit therefrom.”) (emphasis added).