### GRAY *v.* LINCOLN HOUSING TRUST.

1. PRINCIPAL AND AGENT — HOUSING TRUST BOUND BY FISCAL AGENCY.

    Where practically the entire management of defendant housing trust was by it turned over to a fiscal agency, said agency had power to bind the trust in financing plaintiff's real estate development.[1]

2. CANCELLATION OF INSTRUMENTS—MORTGAGES—DELAY IN COMMENCING SUIT DID NOT AMOUNT TO LACHES.

    Where plaintiff executed a mortgage on his real estate for the purpose of securing money from defendant trust for the purpose of developing it, but defendant failed to furnish the money at the time set, and sought to defer the time therefor, to which plaintiff refused to consent and gave notice of rescission, his delay for over a year in commencing suit for the cancellation of the mortgage did not amount to laches.[2]

3. SAME—CONDITIONS OF LOAN MET WHERE ALL PARTIES UNDERSTOOD CONDITIONS.

    In view of the fact that all of the parties understood that the small amount of income the mortgaged property was producing would satisfy the provision required as a condition to loaning that the mortgage was to be given

[1]Agency, 2 C. J. § 287; [2]Cancellation of Instruments, 9 C. J. § 81. On priority of claims against property in hands of receiver over recorded liens, see notes in 2 L. R. A. (N. S.) 1013; 41 L. R. A. (N. S.) 695.

on income-producing property and that the money was to be furnished by defendant for the purpose of making the property produce a substantial income, it may not be claimed that the income was insufficient to meet the requirement.[3]

4. SAME—RIGHTS OF INNOCENT THIRD PARTIES NOT AFFECTED.

Defendants' claim that the rights of innocent third parties have intervened, rendering it inequitable to cancel plaintiff's mortgage, *held*, not supported by any proof.[4]

5. SAME—FAILURE OF CONSIDERATION.

Where the consideration for a mortgage on plaintiff's real estate was defendant's agreement to finance plaintiff's development plans, but no money has been furnished, and inability to furnish even the first instalment was admitted by defendant, plaintiff is entitled to the cancellation of the mortgage.[5]

6. RECEIVERS—RECEIVER TAKES ASSETS SUBJECT TO EQUITIES.

A receiver does not take title as a *bona fide* purchaser, but takes assets subject to equities existing between the parties, and therefore his title and right can be no greater than the one for whose assets he is receiver and in whose shoes he stands.[6]

7. SAME—PLAINTIFF'S RIGHT TO CANCEL MORTGAGE SURVIVES APPOINTMENT OF RECEIVER FOR DEFENDANT.

Where plaintiff was entitled to the cancellation of a mortgage because of defendant's failure to furnish any consideration therefor, said right survived the appointment of a receiver for defendant made after the institution of the suit to cancel the mortgage.[7]

Appeal from Wayne; Webster (Arthur), J.   Submitted October 17, 1924.   (Docket No. 116.)   Decided December 31, 1924.

Bill by Edward Gray against the Lincoln Housing Trust and another for the cancellation of a mortgage. Hezekiah N. Duff, receiver for defendants, intervened as a party defendant.   From a decree for plaintiff, said receiver appeals.   Affirmed.

---

[3]Building and Loan Associations, 9 C. J. § 79 (1926 Anno); [4]Cancellation of Instruments, 9 C. J. § 196; [5]Id., 9 C. J. § 46; [6]Receivers, 34 Cyc. pp. 191, 193; [7]Id., 34 Cyc. p. 193.

*Lucking, Helfman, Lucking & Hanlon,* for plaintiff.

*Benjamin S. Pagel* and *A. W. Sempliner,* for appellant.

The plaintiff owned real estate in Detroit which he desired to develop.   His plans were pretentious and a very large amount of money was needed to finance the project.   Defendant Lincoln Housing Trust, hereafter called the Trust, was a so-called common-law trust created in Missouri but authorized to transact business in Michigan.   Its plan of doing business was somewhat similar to that of building and loan associations.   The Lincoln Fiscal Agency, hereafter called the Agency, was its general agent for the sale of its shares and the transaction of its business.   In view of one of the claims of defendants, we shall presently elaborate further on the relations of these two defendants.   Representatives of defendant opened negotiations with plaintiff to finance his proposition.   These negotiations covered a considerable period.   Under the workings of the general plan of the Trust the right to obtain a loan under its certificates was not expected to ripen under three years; this plan was not at all acceptable to plaintiff as he desired to begin his work of development much sooner, but it seems that defendants conceived the plan of buying so-called "priorities," *i. e.,* certificates which had been outstanding for some time and on which the right to borrow would accrue sooner than new certificates.   On August 26, 1922, a proposal was submitted to plaintiff for financing his proposition.   It was signed by the Agency and was accepted by plaintiff.   It contemplated the execution of a mortgage for $45,000 on a portion of plaintiff's property, the purchase of "priorities" with that sum, the furnishing by the Trust of $50,000 in December, 1922, or January, 1923, $250,000 in June or July, 1923, $500,000 between May and

September, 1923, and a balance of $2,200,000 at the rate of $500,000 or more a month beginning in May, 1924, all to be secured by mortgage on plaintiff's property. The mortgage for $45,000 was executed to the Trust and the money turned over to the Agency to be used in the purchase of priorities. Priorities were purchased. Plaintiff received no cash on this transaction. When the time arrived that he was to receive some money, the $50,000, he was informed by defendants that they would not carry out their agreement; they sought to defer the furnishing of the money but he declined to accept further promises and gave notice of rescission; the bill in the present case to cancel the mortgage was prepared but its filing was deferred at the request of defendant; it was filed on March 6, 1923, and defendants Trust and Agency appeared and answered.

On June 20, 1923, Hezekiah N. Duff was appointed receiver of the Trust and the Agency and qualified as such. A receiver was also appointed for the Trust in Missouri. The Trust has substantially $200,000 in assets in Michigan and its liabilities here exceed that amount. The Agency has no assets in Michigan. An audit conducted by the Missouri receiver shows that the Trust has greater assets than liabilities although as suggested by counsel losses and expenses will probably reduce its assets below its liabilities as the margin is not very wide. The receiver intervened in this suit and was heard. The Trust and Agency did not appear at the hearing. From a decree granting plaintiff the relief prayed, the receiver appeals.

FELLOWS, J. (*after stating the facts*). There can be no doubt upon this record of the authority of the Agency to bind the Trust. By the terms of their agreement practically the entire management of the Trust was turned over to the Agency. It received

the first four monthly payments of $7.50 each made on each $1,000 of certificates issued and 50 cents on all other monthly payments and in turn was to pay the entire expenses of the Trust; it was empowered to appoint all sales agents, sales managers and agents for the Trust and countersign all certificates. The agreement between the Trust and the Agency itself establishes the authority, and if anything confirmatory of the contract was needed, it will be sufficient to note that the mortgage given in this case runs to the Trust and was in the possession of its receiver when the case was tried.

There was no laches on the part of the plaintiff. We are satisfied that all the parties understood that the small amount of income the property was producing would satisfy the provision that the mortgage was to be given on income-producing property. The money was to be furnished for the purpose of making the property produce a substantial income and everyone connected with the transaction so understood. The claim that rights of innocent third persons have intervened is not supported by any proof. So far as this record discloses no one purchased certificates relying on the fact that this mortgage was among the assets of the Trust and there is no proof that would sustain the claim that others have prior equities to those of plaintiff.

The consideration of this mortgage was the agreement to finance plaintiff's proposition, to furnish him $3,000,000 in cash. Not one penny has been furnished him and the inability to furnish even the first $50,000 was admitted. There has been a failure of consideration and the Trust has breached its contract in its very essential and material provision. Under these circumstances it is unnecessary to consider the question of whether there was fraud in procuring the mortgage or whether the plan of the Trust was workable or

not.    As between the plaintiff and the Trust plaintiff is entitled to the relief prayed.    This leads to the important question in the case, *i. e.*, do such rights survive the appointment of a receiver made after the institution of this suit?    We have already pointed out that plaintiff's equities are not postponed to those of others and this is not a suit by the receiver to set aside a conveyance of corporate property made in fraud of creditors, therefore our present inquiry is directed to the character of the title of the receiver and his rights as an arm of the court.

We think it must be taken as the settled law in this jurisdiction that the receiver does not take title as a *bona fide* purchaser but takes the assets subject to the equities existing between the parties.    His title and right can be no greater than the one for whose assets he is receiver and in whose shoes he stands. Among the cases so holding, see the following: *Kalamazoo Trust Co.* v. *Merrill,* 159 Mich. 649; *Marine Savings Bank* v. *Norton,* 160 Mich. 614; *Wisconsin, etc., Bank* v. *Lumber Co.,* 77 Mich. 76; *Rickman* v. *Rickman,* 180 Mich. 224 (Ann. Cas. 1915C, 1237); *In re Farmers' & Merchants' Bank,* 194 Mich. 200; *Fisk* v. *Savings Bank,* 225 Mich. 580, 585; and our holdings are in accord with the great weight of authority.    See *Hubbard* v. *Hamilton Bank,* 7 Metc. (Mass.) 340; *American Trust & Savings Bank* v. *McGettigan,* 152 Ind. 582, 587 (52 N. E. 793, 71 Am. St. Rep. 345); *First National Bank* v. *Cook,* 12 Wyo. 492 (76 Pac. 674, 78 Pac. 1083, 2 L. R. A. [N. S.] 1012); *Nix* v. *Ellis,* 118 Ga. 345, 347 (45 S. E. 404, 98 Am. St. Rep. 111); *Rogers & Baldwin Hardware Co.* v. *Building Co.,* 132 Mo. 442 (34 S. W. 57, 31 L. R. A. 335, 53 Am. St. Rep. 494); *Lawson* v. *Warren,* 34 Okla. 94 (124 Pac. 46, 42 L. R. A. [N. S.] 183, Ann. Cas. 1914C, 139); *Scott* v. *Armstrong,* 146 U. S. 499 (13 Sup. Ct. 148); *Funk* v. *Young,* 138 Ark.

38 (210 S. W. 143, 5 A. L. R. 79).    That the text-writers recognize this rule will be seen by the following excerpts:

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment. He becomes merely the assignee of the insolvent, and has exactly the same rights.    He is not an innocent purchaser in any sense of that term." 23 R. C. L. p. 56.

"When a court takes possession of property of an insolvent corporation and appoints a receiver such receiver is the 'arm of the court' by which it administers the trust for the benefit of the creditors. The court receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims and the standing of liens remain unaffected by the receivership.    It is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities as it is to make a just distribution among the general creditors." 23 R. C. L. p. 108.

"Since the appointment of a receiver *in limine* does not affect any questions of right involved in the action, and does not change any contract relations or rights of action existing between parties, it follows as a general rule that in ordinary actions brought by a receiver in his official capacity, to recover upon an obligation or demand due to the person or estate which has passed under the receiver's control, the defendant may avail himself of any matter of defense which he might have urged had the action been brought by the original party instead of by his receiver." High on Receivers (4th Ed.), § 245.

"As the rights of the parties to an action are not interfered with by the appointment of a receiver, the possession of the receiver can not, of itself, be held to put the tenant out of occupation.    The appointment by the court of a receiver over the estate of a defendant does not change the correlative rights of landlord and tenant previously subsisting between the defendant

and his tenants, though the court thereby acquires additional powers of enforcing the landlord's rights." Kerr on Receivers (7th Ed.), p. 188.

"The appointment of a receiver has this indirect effect upon pending actions.    If the plaintiff in such an action wants a judgment against the defendant corporation for some purpose other than a right to share in the assets, in the hands of the court he could go on with his action.    But if he wishes to establish his right to share in the assets in the possession of the appointing court, the further prosecution of that action will not help him."    1 Clark on Receivers, § 700.

In *Merchants' and Manufacturers' National Bank* v. *Kent Circuit Judge*, 43 Mich. 292, the bank had brought replevin; a receiver had been appointed and the court below had restrained the prosecution of the replevin case.    In sustaining the right of the bank to proceed with the replevin case instead of proceeding in trover and participating in the distributing of the assets, it was said by Mr. Justice COOLEY, speaking for the court:

"It was proper and just that the bank be allowed to go on with the suit in replevin, if that seemed most for its interest, and improper and unjust that it should be restricted to a suit in trover, which would be in effect for net proceeds only after the costs of a receivership, which the bank did not desire or assent to, had been deducted.    If the property belonged to the bank, the injustice of requiring the owner to submit to such management, manufacture, and sale of it as another person might think expedient, and to recover the net proceeds only after the costs of a receivership in a suit between other parties had been wholly or in part deducted, would be too manifest to require more than mere mention."

The case of *Dettra* v. *Kestner*, 147 Pa. 566 (23 Atl. 889), in the main sustains the contention of defendant, but we are not inclined to follow it.    We have given consideration to all the claims urged on behalf of the

receiver but are persuaded that the trial judge reached the right result.

The decree will, therefore, be affirmed, with costs of this court.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.