**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JULY 30, 2012

STATE OF MICHIGAN

SUPREME COURT

*In re* RECEIVERSHIP OF 11910 SOUTH
FRANCIS ROAD.

NASTASSIA PRICE and ERIN DUFFY-
PRICE, Personal Representatives of the
Estate of DARRYL HOUSTON PRICE,

      Plaintiffs,

v

No. 143123

LORI JEAN KOSMALSKI and TRADE
DEVELOPMENT COMPANY, a/k/a
TRADE WORLD CORPORATION, INC.,

      Defendants,

and

Estate of RUDAFORD R. STERRETT, JR.,

      Defendant-Appellee,

and

THOMAS WOODS, Receiver,

      Appellee,

and

DART BANK,

> Intervening Defendant-
> Appellant.

_____

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

This case involves the issue of the priority of competing liens between a court-appointed receiver and the holder of a first-recorded mortgage on real property located in DeWitt, Michigan. The receiver, Thomas Woods, seeks to recover receivership expenses *before* the holder of the first-recorded mortgage, Dart Bank, satisfies its mortgage interest. In affirming the circuit court's order placing a first-priority lien on the property in the amount of the receiver's expenses, the Court of Appeals relied, in part, on this Court's decisions in *Bailey v Bailey*[1] and *Fisk v Fisk*[2] and its own decision in *Attica Hydraulic Exchange v Seslar*,[3] to hold that because Dart did not object to and benefited from the receivership, it therefore "may be held responsible for the receivership expenses."[4] We granted Dart's application for leave to appeal to determine whether the common-law rule that receivership expenses are entitled to first priority is controlling,

_____

[1] *Bailey v Bailey*, 262 Mich 215; 247 NW 160 (1933).

[2] *Fisk v Fisk*, 333 Mich 513; 53 NW2d 356 (1952).

[3] *Attica Hydraulic Exch v Seslar*, 264 Mich App 577; 691 NW2d 802 (2004).

[4] *In re Receivership of 11910 South Francis Road (Price v Kosmalski)*, 292 Mich App 294, 299; 806 NW2d 750 (2011).

2

notwithstanding that the holder of a prior recorded mortgage is statutorily entitled to priority under MCL 600.3236, and whether a mortgagee must explicitly consent to the receivership before the mortgagee may be required to pay those sums associated therewith.

Before Michigan became a state, English courts developed the general rule that a receiver is entitled to be paid for his or her services on a first-priority basis. In 1846, Michigan revised and consolidated its statutes. Included within the revised statutes was 1846 RS, ch 130, § 10, which provided that the purchaser of a sheriff's deed following a foreclosure by advertisement holds the same title that the mortgagor had at the time the mortgage was executed and that only prior subsisting liens affected the purchaser's interest. In all material respects, the statute has remained unchanged since 1846 and currently exists as MCL 600.3236. Following adoption of the pertinent foreclosure-by-advertisement statute in 1846, this Court applied the English common-law rule in situations not involving foreclosure by advertisement. So far as we can discern, the common-law rule has never been applied in Michigan to divest the purchaser of a sheriff's deed of the purchaser's statutory right of priority.

This case requires us to determine whether this general common-law rule permitting the court to give priority to a receiver should be extended to the foreclosure-by-advertisement context even though application of that rule would contradict the priorities established by a statute that has been in existence since 1846.

We decline to extend the common-law rule to the situation before us. Rather, we hold that MCL 600.3236 controls and, by its plain language, requires that any liens preexisting the mortgage that is the subject of the foreclosure remain in the same order of

3

priority as they existed at the time of the mortgage's execution. Assuming a receiver's lien postdates the mortgage subject to foreclosure under MCL 600.3236, as the receiver's lien does here, it is clear that the receiver's interest under the lien will be subordinated to the interests of the purchaser and any prior lienholders. Further, it is clear from our caselaw that a mortgagee may waive its right of first-priority satisfaction of its lien. Thus, we also hold that a mortgagee that forecloses consistently with MCL 600.3236 may waive its statutory right of priority and, if that occurs, the receiver may be entitled to compensation before the mortgagee, but only if the mortgagee's waiver is explicitly and unequivocally given.

Because the Court of Appeals in this case failed to recognize the applicability of MCL 600.3236 and erroneously extended the holdings in *Bailey* and *Fisk* to support its conclusion that even in the absence of affirmative consent, Dart could nevertheless be required to pay the receiver's costs and fees, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for entry of an order releasing the escrow funds in favor of Dart.

## I. FACTS AND PROCEDURAL HISTORY

The real property involved in this action was previously owned by Rudaford Sterrett, Jr., and secured by a single mortgage held by Dart, which was duly recorded on August 8, 2003. Upon Sterrett's death in April 2007, the real property was bequeathed to Lori Jean Kosmalski. At that time, the property was valued at $350,000, and the mortgage balance was less than $170,000.

In September 2007, Nastassia Price and Erin Duffy-Price instituted an action against Kosmalski to collect a judgment in an unrelated lawsuit. When they learned that

4

Kosmalski had inherited the real property from Sterret, they moved for the appointment of a receiver to seize and sell the real property in order to satisfy all or part of the judgment against Kosmalski. Dart was not provided notice of Price and Duffy-Price's motion for receivership.

In April 2008, the circuit court granted Price and Duffy-Price's request for receivership and appointed Thomas Woods as receiver.[5] One week later, the circuit court entered an amended stipulated order of appointment, which authorized the receiver to take immediate possession of the property and keep, manage, operate, and preserve it until further order of the circuit court. The powers and duties conferred on the receiver incident to his appointment included the authority to expend the property's equity or borrow funds for the repair, maintenance, and operation of the property necessary to preserve the property and make it saleable. Because the property was uninhabitable, the receiver borrowed approximately $20,000 to finance substantial repairs. These repairs included cleaning the home and its grounds, repairing the heating and air conditioning systems, installing an alarm system, repairing the water system and pool area, and installing a fence.

Approximately one month before the receiver's appointment, Kosmalski had defaulted on the mortgage, and Dart initiated foreclosure proceedings by advertisement in

---

[5] On April 18, 2008, Dart's former counsel, Jon Jenkins, acknowledged by facsimile his receipt of the circuit court's April 10, 2008, receivership order. However, in an affidavit dated May 20, 2009, Jenkins asserted that it was not until after initiation of the foreclosure process that Dart learned of the receivership order.

5

mid-April 2008.[6]  At the June 5, 2008, sheriff's sale, Dart—the sole bidder—purchased the property for $169,312.50, which was the balance due on its mortgage, and obtained a sheriff's deed to the property subject to a one-year redemption period.[7]  On May 18, 2009, the receiver moved to void the sale, arguing that Dart had violated the court's receivership order, which prohibited any interference with the receiver's possession and management of the property.  Dart subsequently intervened in opposition to this motion, asserting that Dart had validly initiated foreclosure proceedings and that, during the pendency of the redemption period, it had not interfered with the receiver's possession of the property.  The circuit court denied the receiver's motion but extended the redemption period until August 25, 2009, to allow the receiver additional time to sell the property. When the receiver was unable to sell the property within the extended redemption period, Dart received title to the property effective August 26, 2009.

In October 2009, the receiver filed a motion seeking to hold Dart liable for payment of the costs and fees incurred in the administration of the receivership.  The receiver claimed $41,874.57 in total expenses, which reflected the costs incurred in repairing, maintaining, and attempting to sell the property, fees for his professional services, and costs for attorney fees incurred as a result of the receiver's motions to enforce the receivership order.  At the motion hearing, the receiver argued that because Dart had acquiesced in the receivership and the receiver's expenditures, he was entitled to

---

[6] In a letter dated May 27, 2008, the receiver acknowledged that he was aware of Dart's foreclosure action and indicated that he did not intend to interfere with the process.

[7] The property was reappraised on June 6, 2009.  At that time, the value of the property had fallen to $245,000.

reimbursement of his costs and fees from Dart. Dart responded that it could not be charged with the receiver's costs and fees when it had not consented to those surcharges.

The circuit court accepted the receiver's argument and entered an order on November 5, 2009, approving the receiver's final report and granting the receiver a lien on the net proceeds from the sale of the property in the amount of $41,874.57, which was given priority over Dart's preexisting mortgage. The lien order further required that the receiver relinquish possession of the property to Dart and discharged the receiver and canceled his bond.[8]

Dart appealed as of right the circuit court's order granting the receiver a first-priority lien over the property, arguing that a receiver is not entitled to any greater rights than the original owner would have had and, therefore, the receiver took title to the property subject to Dart's preexisting mortgage. The Court of Appeals affirmed and, citing *Bailey*,[9] *Fisk*,[10] and *Attica*,[11] held that Dart could be held responsible for the receivership expenses.[12] Under its interpretation of these cases, the Court of Appeals concluded that even without explicitly consenting to the receiver's appointment, Dart

---

[8] Dart raised for the first time in its application for leave to appeal in this Court the applicability of MCR 2.622(D), which confers on the circuit court the discretion to direct the party who sought the appointment of the receiver to pay the receivership expenses. Thus, the circuit court did not consider the relevance of the court rule when it granted relief in favor of the receiver.

[9] *Bailey*, 262 Mich 215.

[10] *Fisk*, 333 Mich 513.

[11] *Attica*, 264 Mich App 577.

[12] *In re Receivership*, 292 Mich App 294.

7

could nevertheless be required to pay the receiver's costs and fees because it benefited from the receivership.[13]

We granted leave to appeal to consider, in relevant part, "whether the statutory right of first priority belonging to the holder of the recorded mortgage, MCL 600.3236, overrides the common-law rule that a receiver's costs and fees are entitled to first priority" and "whether a mortgagee must affirmatively consent to the appointment of a receiver to be required to pay the receiver's costs and fees . . . ."[14]

## II. STANDARD OF REVIEW

Whether the circuit court had the authority to order the holder of a first-recorded mortgage to pay for the expenses of a receivership to which it did not explicitly consent is a question of law that this Court reviews de novo.[15] Questions of statutory interpretation are also reviewed de novo.[16] A circuit court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo.[17]

## III. ANALYSIS

Dart asserts that it has a statutory right to first priority under MCL 600.3236 and that its mortgage interest cannot be made subordinate to subsequently incurred

[13] *Id*. at 299.

[14] *In re Price Estate (Price v Kosmalski)*, 490 Mich 902 (2011). Because these issues are dispositive to the resolution of this appeal, it is unnecessary to address the third issue in our order granting leave.

[15] *Attica*, 264 Mich App at 588.

[16] *People v Osantowski*, 481 Mich 103, 107; 748 NW2d 799 (2008).

[17] *Hendee v Putnam Twp*, 486 Mich 556, 566; 786 NW2d 521 (2010).

8

receivership expenses. The receiver, on the other hand, argues that a common-law rule grants a receiver's expenses first priority, despite the existence of any preexisting liens on the property. Resolution of this dispute first requires an understanding of the common-law principles that have developed on the issue of the priority of payment of receivers' liens.

## A. THE COMMON LAW

It is well established that our common law is descended from England,[18] and, consequently, the law of receiverships in Michigan is generally adopted from English common law. As far back as 1759, the English Court of Chancery recognized that the "master is to allow [a receiver] a reasonable salary for his care and pains therein."[19] In the event that a competing property interest existed, as in the present case, the English Court of Chancery and the Court of Common Pleas consistently held that a receiver was entitled to this "reasonable salary" for the receiver's services and expenditures on a first-priority basis regardless of which party ultimately prevailed or was held liable to pay for the receiver's services and expenditures.[20]

---

[18] *In re Lamphere*, 61 Mich 105, 108; 27 NW 882 (1886).

[19] *Carlisle v Lord Berkley*, 27 Eng Rep 390; Ambler's Rep 599 (Ch, 1759).

[20] See *Malcolm v O'Callaghan*, 40 Eng Rep 844; 3 Myl & Cr 52; SC 1 Jur (OS) 838 (Ch, 1837) (holding that a receiver is entitled to have out of the funds collected or realized by him his costs and fees properly incurred in the discharge of his duties as receiver); *Morison v Morison*, 4 Myl & Cr 215 (Ch, 1838) (in a suit to administer a West Indian estate, a court-appointed consignee was held entitled to repayment out of the corpus of the estate his costs and fees, which were to be given priority over competing claims in the suit); *Gilbert v Dyneley*, 133 Eng Rep 1038; 3 Man & G 12; SC 3 Scott, NR 364; 5 Jur 843 (1841) (holding that the receiver was entitled to deduct from the moneys received by him the reasonable costs and fees he incurred in the administration of the receivership

9

We noted this common-law rule in *In re Dissolution of Henry Smith Floral Co*[21] when we held that "the compensation of the receiver and his counsel are part of court administrative costs and entitled to priority over receiver's certificates constitut[ing] a first lien on [the] assets."[22]  The Court reasoned:

> The compensation of a receiver and his attorneys is out of funds or property *in custodia legis*, and no lien, authorized by the court, on the funds or property has priority of such court administrative costs.  The lien, granted holders of the receiver's certificates, was not superior to such administrative costs.  *Administrative costs are not at all of the nature of a lien, and a first lien on assets has no priority of such court costs and expenses*.[23]

One year later in *Detroit Trust Co v Detroit City Service Co*,[24] we likewise applied this general common-law rule when we held that the receivers were entitled to deduct their fees and expenses from profits earned in the operation of the business held in receivership, proceeds from the sale of the equity of redemption, and proceeds from the sale of unmortgaged property before those funds were distributed as dividends to

---

*before* applying those, in whole or in part, in satisfaction of the outstanding mortgage interest).

[21] *In re Dissolution of Henry Smith Floral Co*, 260 Mich 299, 301-302, 306; 244 NW 480 (1932).

[22] *Id*. at 302-303.

[23] *Id*. at 302 (emphasis added).

[24] *Detroit Trust Co v Detroit City Serv Co*, 262 Mich 14, 51-53; 247 NW 76 (1933).

creditors.[25]  And later, in *In re Rite-Way Tool & Mfg Co*,[26] wherein this Court addressed whether the liquidation proceeds of personal property held in receivership should be applied toward property taxes assessed on the receivership property before satisfying the preexisting mortgage indebtedness, this Court similarly held that receiver's costs were entitled to first priority.  We stated:

> [T]he receiver should *first apply funds* received from liquidation of the receivership assets (including the chattel mortgaged property) *in payment of the costs of administration of the receivership*, including taxes herein involved, and the fees of the receiver and his attorney as fixed by the court; and thereafter in the following order apply receivership funds in his hands in payment of (2) the chattel mortgages; (3) claims of general creditors; and (4) the balance of such funds, if any, to the partners.[27]

*Henry Smith*, *Detroit Trust Co*, and *Rite-Way Tool*, therefore, applied the common-law rule that the receiver invokes here: that a receiver's unpaid fees and compensation, which are in the nature of "administrative costs," may be paid from the property or funds held in receivership before those funds are made available to prior creditors.  None of those cases, however, involved foreclosure by advertisement.  And while the pertinence of the common-law rule seems apparent, the Court of Appeals erred by failing to recognize that a provision of the foreclosure-by-advertisement statute, MCL

---

[25] See *id*. at 51 (directing the trial court to "estimate[] and deduct[] . . . the further expenses of the receivership . . . that must be paid from such profits *before they become available for dividend purposes*") (emphasis added), and *id.* at 52 ("In determining the amount of the dividends to be paid, a fair sum should be estimated and *deducted for fees of the receiver*, attorneys, and for all other lawful charges.") (emphasis added).

[26] *In re Rite-Way Tool & Mfg Co*, 333 Mich 551; 53 NW2d 373 (1952).

[27] *Id.* at 558-559 (emphasis added).

600.3236, is directly applicable to this matter and that no Michigan case has applied the common-law rule in this context.[28]

## B. STATUTORY RIGHT OF PRIORITY

Notwithstanding the receiver's contrary assertion, the plain language of MCL 600.3236 creates a statutory right of priority.[29] When interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent.[30] The best indicator of that intent is the language used.[31] When construing statutory language, we must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined.[32] If statutory language is clear and

---

[28] The issue whether the rule from these cases continues to apply outside of the context presented in this case is not before us, and we leave resolution of that question for another day. Further, we do not speculate whether, absent the statute, the receiver in this case would have been entitled to superior priority over Dart as the mortgagee because, assuming that the general common-law rule would have applied in those circumstances, it is not ascertainable from what source the receiver's compensation would have been payable given the function of MCR 2.622(D). See note 8 of this opinion.

[29] The first version of this statute was enacted in 1844 and subsequently included in the 1846 revision and consolidation of the statutes, nearly 10 years after Michigan became a state. See 1846 RS, ch 130, § 10 and 1844 PA 40, § 6 (establishing that the purchaser of a sheriff's deed acquires the interest held by the mortgagor at the time the mortgage was executed). The provision underwent several minor amendments and was included in subsequent compilations before it was reenacted in 1961 as MCL 600.3236 (effective January 1, 1963), in the Revised Judicature Act (RJA), MCL 600.101 *et seq*. In all material respects, however, the statute has remained unchanged since 1846.

[30] *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).

[31] *Id*.

[32] MCL 8.3a; *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002).

12

unambiguous, then judicial construction is neither required nor permitted, and the statute must be applied as written.[33]

MCL 600.3236 describes the legal effect of a sheriff's deed obtained at a foreclosure sale upon the expiration of the applicable redemption period.[34] The statute provides in full:

> Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and *shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage*, or at any time thereafter, except as to any parcel or parcels which may have been redeemed and canceled, as hereinafter provided; and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, *but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby*.[35]

The first clause under this provision describes the legal effect and operation of a deed upon the mortgagor's failure to exercise its statutory right of redemption following foreclosure. The first clause of MCL 600.3236 makes plain that if property is not redeemed within the applicable statutory window, then the deed becomes "operative,"

---

[33] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[34] If a mortgagor defaults on a mortgage containing a power of sale, like Dart's mortgage here, the property may be foreclosed on and sold at a sheriff's sale. See MCL 600.3201 through 600.3224. Upon that sale, the purchaser acquires a sheriff's deed, which only becomes effective if the mortgagor does not exercise his or her right of redemption within the applicable statutory window. See MCL 600.3228; MCL 600.3232; MCL 600.3240(1).

[35] Emphasis added.

vesting in the grantee "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage . . . ." This clause refers to those rights that existed at the time that the mortgage subject to foreclosure was executed. The grantee thus succeeds to the same rights—no greater and no fewer—as those held by the mortgagor when the mortgage was executed. By logical implication, this first clause renders absolute the mortgagee's title to the property it purchased in a foreclosure proceeding, extinguishing any "right, title, and interest" created subsequent to the creation of the mortgage being foreclosed upon, which includes liens created *after* the execution of the mortgage.[36]

The last clause of MCL 600.3236, which is central to the legal question in this case, makes plain, however, that any interests *preexisting* the execution of the subject mortgage will not be prejudiced by a foreclosure sale. Specifically, the pertinent language of this clause provides that "no person having any valid subsisting lien upon the

---

[36] At oral argument, the receiver argued that the pertinent statutory language in this first clause is the phrase "or at any time thereafter," which, according to the receiver, allows a court to subordinate a senior mortgage to a junior lien. Specifically, the receiver asserts that because Sterrett "has incurred a liability by virtue of the appointment of a receiver, and that affected his immediate title and therefore that's the same title that the bank has inherited." That interpretation cannot be reconciled with the plain text of MCL 600.3236. The phrase "or at any time thereafter" clearly refers to the mortgagor's positive title in the property. Thus, the phrase "or at any time thereafter" cannot be interpreted to mean that a subsequently imposed lien takes priority over the mortgagee's interest because that would nullify MCL 600.3236. Indeed, if the receiver's interpretation were accurate, then the last phrase of MCL 600.3236, which establishes the principle that only liens imposed before execution of the mortgage at issue are not prejudiced by foreclosure, would be contradictory. Further, the receiver's interpretation poses a practical dilemma to the extent that Sterrett's interest could never have been subject to the receivership lien given that he died 2½ years before its imposition.

mortgaged premises . . . created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby." Although the statute does not define "valid subsisting lien," the next phrase qualifies that term to mean a lien "created before . . . such mortgage took effect . . . ."[37] The provision then mandates that such liens "shall" not be "prejudiced" or "in any way affected" by the foreclosure sale. The clear import of this language is that those lienholders whose interests preexisted the mortgage's execution will have the exact same rights following foreclosure as those previously held at the time the mortgage was executed. It follows that the order of priority at the time of the mortgage's execution must be maintained after a foreclosure sale.[38]

---

[37] According to its plain language, MCL 600.3236 necessarily limits a "valid subsisting lien" to one that was created before the mortgage took effect because "subsist" means "to have existence[.]" *Webster's Third New International Dictionary, Unabridged Edition* (1965). To allow a lien that did not exist at the time the mortgage was executed to prejudice the purchaser's title would result in judicial subrogation, wherein the party with the statutory right of priority is displaced by the party favored by the court. When the Legislature has prescribed the order of priority, our courts may not vary it by resort to equity. Cf. *Stokes v Millen Roofing Co*, 466 Mich 660, 673; 649 NW2d 371 (2002) (holding that an unlicensed builder could not "have equitable relief because any such relief would allow equity to be used to defeat the statutory ban on an unlicensed contractor seeking compensation for residential construction"). This is particularly so here, given that this Court has provided a means to ensure that a receiver's expenses are paid by the party seeking to establish a receivership. See MCR 2.622(D).

[38] Michigan is a recording-priority jurisdiction and, thus, a recorded mortgage lien is held superior to any lien subsequently recorded. This rule, generally referred to as "first in time, first in right," is subject to several statutory exceptions that grant certain liens first priority no matter their time of creation. See MCL 324.20138(2) (environmental remediation costs), MCL 211.40 (real estate taxes), and MCL 570.1119(3) (construction liens). However, there is no statutory exception for receivership expenses.

15

When read as a whole, then, MCL 600.3236 requires that any interests in property created after the mortgage subject to foreclosure was executed will be extinguished upon expiration of the redemption period after a sheriff's sale; however, any interests preexisting the mortgage's execution will not be affected by "any such sale," and the grantee under a sheriff's deed will take the property subject to those preexisting interests. Accordingly, we hold that MCL 600.3236, by its plain language, requires that after a sheriff's sale and expiration of the redemption period, any lien preexisting the mortgage that was the subject of the foreclosure sale remains in the same order of priority as at the time of that mortgage's execution.

Because Dart foreclosed on the property by advertisement, MCL 600.3236 applies, and its application makes clear that Dart's first-recorded mortgage has first priority, given that no other liens existed when the mortgage was executed. By operation of MCL 600.3236, any liens created after the execution of Dart's mortgage in 2003, which includes the receiver's lien created by order of the circuit court in 2009, could not prejudice Dart's priority interest.[39] The receiver argues, however, that the common-law

---

[39] This statutory priority rule is actually in accord with Michigan common-law priority rules established in related areas of law involving judicially created receiverships. Cf. *Gray v Lincoln Housing Trust*, 229 Mich 441; 201 NW 489 (1924), in which a receiver was appointed to manage the affairs of the failing trust, which held as an asset the plaintiff's mortgage. When the trust breached a related agreement with the plaintiff, the plaintiff filed suit against the trust to cancel the mortgage, and the receiver, who had been appointed after the plaintiff initiated suit, intervened to recover his compensation. The Court ruled in favor of the plaintiff, reasoning that "'the relative rank of claims and the standing of liens remain unaffected by the receivership.'" *Id*. at 447, quoting 23 Ruling Case Law, § 118, p 108. The Court further stated:

> We think it must be taken as the settled law in this jurisdiction that the receiver does not take title as a *bona fide* purchaser but takes the assets

rule controls and grants his lien first priority over Dart's preexisting mortgage. We disagree with the receiver's argument because, while the general common-law rule pertaining to receivership priority has certainly been recognized throughout our jurisprudence, the caselaw on which the receiver relies demonstrates that this rule has not been applied in the foreclosure-by-advertisement context. Indeed, we are aware of no Michigan case that imposed the common-law rule as adopted from England so as to divest the purchaser of a sheriff's deed of his or her statutory right of priority pursuant to MCL 600.3236. To apply the common-law rule despite the imperative of the plain statutory language, providing the holder of a prior recorded mortgage with a right of priority over *all* subsequently created interests in the property, would impermissibly shift a receivership lien that is created subsequent to the time at which the mortgage subject to

---

subject to the equities existing between the parties. His title and right can be no greater than the one for whose assets he is receiver and in whose shoes he stands. [*Gray*, 229 Mich at 446.]

The rule articulated in *Gray* has been relied on in other cases. See *Uhl v Wexford Co*, 275 Mich 712, 715; 267 NW 775 (1936) (holding that a validly appointed receiver takes the assets of the property subject to those interests that existed between the parties at the time of his or her appointment); *Franklin Co v Buhl Land Co*, 264 Mich 531, 535; 250 NW 299 (1933) (holding that because the plaintiff's receiver was appointed after the commencement of the suit, the defendant's setoff of its judgment against the plaintiff did not lead to a preference over other creditors because a receiver takes the assets subject to equities existing between the parties at the time of his or her appointment); and *Stram v Jackson*, 248 Mich 171, 176; 226 NW 888 (1929) (holding that the purchaser of mortgaged property stands in the shoes of the mortgagor and can urge no defense to the mortgage not open to mortgagor); see also *Rickman v Rickman*, 180 Mich 224, 248, 250; 146 NW 609 (1914) (holding that a plaintiff who brings suit *before* the filing of a bill of dissolution of a firm acquired priority over other creditors, including the receiver, who takes only the rights of the firm and is affected by all claims, liens, and equities which would prevail against the firm).

17

foreclosure took effect to the first-priority position. Because application of the common-law rule would irreconcilably conflict with application of MCL 600.3236, we decline to extend the common-law rule to circumstances like those presented here, in which MCL 600.3236 specifically controls the order of priority of preexisting competing liens, including receivership liens, after a foreclosure by advertisement.[40]

## C. CONSENT

Relying on *Bailey*[41] and *Fisk*,[42] the receiver, like the Court of Appeals, nevertheless insists that he is entitled to prior satisfaction of his costs and fees, even without Dart's explicit consent, on the basis that Dart acquiesced in the receivership. However, the receiver's assertion is wholly unsupported by our jurisprudence. In *Bailey*, this Court held that when a mortgagee consents to the appointment of a receiver as well as to the reordering of the priorities, the mortgagee may be charged with payment of the receiver's costs and fees. Likewise, in *Fisk*, the Court held that when a party agreed by stipulation to the appointment of certain receivers, that party was precluded from challenging payment of a receiver's compensation. Thus, both *Bailey* and *Fisk* are distinguishable from the facts of this case, given that it is undisputed that Dart did not explicitly consent to either the appointment of a receiver or to the reordering of the

---

[40] See *Pulver v Dundee Cement Co*, 445 Mich 68, 75 n 8; 515 NW2d 728 (1994) (holding that if there "if there is a conflict between the common law and a statutory provision, the common law must yield").

[41] *Bailey*, 262 Mich 215.

[42] *Fisk*, 333 Mich 513.

priorities.[43]  Certainly, a party can waive its statutory rights.[44]  No legal authority, however, justifies the extension of the rule articulated in *Bailey* and *Fisk* to circumstances like the present, in which the mortgagee failed to object to, or merely acquiesced in, the receiver's appointment, and the Court of Appeals erred by holding to the contrary.[45]

---

[43] Though Justice CAVANAGH does not disagree with our conclusion that *Bailey* and *Fisk* are more akin to our waiver jurisprudence and do not create a common-law rule that permits the mortgagee's priority to be subordinated without the mortgagee's explicit consent to the receivership, he curiously extends the holdings in those cases to conclude that acquiescence is sufficient to effect a waiver.  However, the resolution reached in *Bailey* and *Fisk* appears to have been prompted by the Court's interest in preventing the mortgagee from *actually agreeing* that the receiver incur costs only to subsequently deny responsibility for payment of those costs.  Again, as we note later in this opinion, all the confusion about who should bear the cost of the receiver's expenses is entirely avoided by use of MCR 2.622(D), and we advise courts to consider using this court rule in the future when the appointment of receivers is contemplated.

[44] "As defined by this Court, 'waiver' connotes an intentional abandonment of a known right."  *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 64 n 4; 642 NW2d 663 (2002), citing *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999).  Conversely, "a 'forfeiture' is the failure to assert a right in a timely fashion."  *Roberts*, 466 Mich at 69, citing *Carines*.

[45] Our waiver jurisprudence generally does not recognize mere acquiescence as a means to waive a known right.  See *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 365; 666 NW2d 251 (2003) (holding that "[m]ere knowing silence generally cannot constitute waiver").  Even Justice CAVANAGH's creative interpretation of *Bailey* and *Fisk* does not support this proposition.  Justice CAVANAGH interprets *Bailey* as supporting his assertion that "waiver may also occur by way of acquiescence."  *Post* at 2.  However, that "[t]he mortgagees dealt with the receiver promptly and in an effort to save loss to themselves by keeping the hotel a going concern, and receivership was used in an attempt to effect sale of the property" and that the mortgagees "availed themselves of any possible advantage of the receivership" was not the Court's pronouncement that acquiescence is sufficient to constitute waiver, but simply a corollary of the Court's recognition that the "bill [of receivership costs] was filed *by consent*."  *Bailey*, 262 Mich at 219 (emphasis added).  Justice CAVANAGH's reliance on *Bailey* for his acquiescence argument is unsustainable.  Justice CAVANAGH's similar interpretation of *Fisk* is likewise unsustainable for reasons we explain later in this opinion.

19

Nor is there any legal authority supporting the Court of Appeals' conclusion that a party merely *benefiting* from a receivership may be liable for the receiver's costs and fees. Neither *Bailey* nor *Fisk* supports that conclusion. In both *Bailey* and *Fisk*, it was the fact that the parties had expressly consented to the receivership that justified the Court's reordering of the priorities and imposition of the receiver's fees, respectively. Further, the Court of Appeals' reliance on *Attica* was misplaced because *Attica* erroneously characterized *Fisk* as unequivocally holding "that the party who benefited from the receivership is responsible for the receivership expenses . . . ."[46] Rather, *Fisk* held that the general rule is that a receiver's fees should be taken from the property in the receivership. In this case, however, in which the property is insufficient to satisfy the mortgagee's superior lien and the receiver's fees, this general rule cannot be applied.

Moreover, the additional caselaw cited by Justice CAVANAGH in support of his contention that this Court has recognized waiver based on acquiescence is distinguishable from the present matter. See *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 219, 223; 737 NW2d 670 (2007) (holding that a party is not precluded from enforcing a deed restriction despite the party's failure to contest a prior violation as long as the prior violation was of a "less serious character" than the subsequent one when a contrary rule would "create increasing chaos in the enforcement of deed restrictions"); *Sampeer v Boschma*, 369 Mich 261, 263, 266; 119 NW2d 607 (1963) (holding that the defendants had waived strict compliance with a procedural rule requiring the court to file and serve on both parties a pretrial statement when defense counsel had knowledge of the procedural irregularity and to which no objection was made at the time); and *Smith v First United Presbyterian Church*, 333 Mich 1, 11; 52 NW2d 568 (1952) (holding that by "vigilant[ly]" maintaining the single-residential character of subdivision property in accordance with the general subdivision plan, the purchaser "acquiesced in the general plan . . . and waived any right she or her grantees would have to act outside of it"). Those same policy concerns, factual circumstances, and affirmative conduct by the party deemed to have waived a known right are clearly not at issue in the present matter. These cases, therefore, fail to demonstrate Dart's intentional relinquishment of its statutory right of first priority.

[46] *Attica*, 264 Mich App at 592.

Indeed, the mere receipt of a benefit because of the receiver's actions does not justify disregarding MCL 600.3236. Rather, when MCL 600.3236 is applicable, a receiver's expenses will generally not be entitled to first priority; only when the mortgagee has unequivocally waived this statutory right of first priority will the receiver be entitled to prior satisfaction of his or her expenses consistently with the common-law rule. For these reasons, it was improper for the Court of Appeals to rely on *Bailey*, *Fisk*, and *Attica* as its bases for requiring Dart to pay the receiver's costs and fees.[47]

## IV. APPLICATION

Application of the statute to the facts of this case mandates that Dart, as the holder of a first-recorded mortgage, be entitled to satisfaction of its mortgage interest from the proceeds of the foreclosure sale on a first-priority basis. Dart's first-recorded mortgage took effect on August 8, 2003. Dart validly foreclosed on its mortgage, the property was not redeemed within the extended redemption period, and Dart became the legal and equitable titleholder of the real property under the sheriff's deed on August 26, 2009.

---

[47] The receiver also relies on this Court's decision in *In re Petition of Chaffee*, 262 Mich 291; 247 NW 186 (1933), for the proposition that because Dart did not move for leave to proceed independently of the receiver, it was precluded from interfering with the receivership. *Chaffee*, however, is inapplicable because that case involved the validity of a foreclosure sale, not the competing priority of a receiver's lien and a preexisting mortgage. Further, to the extent the receiver attempts to attack the validity of the foreclosure proceedings, we note that *Chafee* is plainly distinguishable. In that case, we affirmed a circuit court's decision to void a foreclosure sale when the mortgagee proceeded with foreclosure proceedings without the court's permission. In this case, the receiver indicated before the foreclosure sale that he did not intend to interfere with Dart's foreclosure. Moreover, when the receiver did move to void the foreclosure sale, nearly a year after the sale had taken place, the circuit court merely extended the redemption period. The receiver has not appealed that decision and, therefore, the validity of the foreclosure proceeding is not before this Court.

21

The receivership lien was *subsequently* created on November 5, 2009, by order of the circuit court. Because a purchaser of a sheriff's deed takes the property with only those liens that existed at the time the mortgage took effect, and there was no receivership lien when Dart's mortgage took effect in 2003, Dart's first-recorded mortgage has a statutory right of priority under MCL 600.3236 over all other subsequent liens. Moreover, because Dart did not explicitly waive its statutory right of priority, the rule articulated in *Bailey* and *Fisk* is inapplicable and the receiver is precluded from recovering the receivership expenses from Dart.

Further, although the receiver's lien in this case could not prejudice Dart's priority interest, we acknowledge the need for guidance with regard to priority and payment of receivers' liens. Circuit courts appointing receivers should be cognizant of MCR 2.622(D), which permits a circuit court, "on application of the receiver," to set the compensation of the receiver, and to require the party requesting the receivership to bear the costs associated with it. But regardless of whether a circuit court chooses to exercise its discretion under the court rule, the circuit court, at the time it appoints a receiver, should nevertheless make provision for the payment of receivership expenses and should be aware of the order of priority of any competing interests and other relevant collateral issues that could affect a receiver's compensation. This is particularly important in the context of foreclosure by advertisement, when, as in the present case, a receiver's lien may be extinguished by operation of MCL 600.3236. Not only did the circuit court in the instant case fail to consider the effect of MCL 600.3236 on the receiver's lien, it also failed to consider the court rule. By application of MCR 2.622(D), the receiver might nonetheless have received compensation for the expenses incurred in his administration

22

of the receivership despite the order of priorities, potentially avoiding a situation like that here.  That is, had the circuit court exercised its discretion under the court rule, Price and Duffy-Price, as the parties requesting the receivership, might have been liable for payment of the receivership expenses out of their own funds and the receiver might not have been deprived of any compensation.[48]

## V.  CONCLUSION

Because MCL 600.3236 operates to preserve the order of priority following expiration of the applicable redemption period, it necessarily follows that the order of priority for any liens preexisting the mortgage that is the subject of the foreclosure will remain as it did at the time of the mortgage's execution.  Because this statutory provision cannot be reconciled with the common-law rule and because the common-law rule has never been applied to a foreclosure by advertisement under MCL 600.3236, we decline to extend the common-law rule in this case and, consequently, the statute controls.  We

---

[48] If, for example, there had been sufficient equity in the property to satisfy both Dart's preexisting mortgage interest and the receiver's costs and fees, the proper order of distribution of the proceeds following the sale of the DeWitt property would have first required satisfaction of Dart's prior recorded mortgage followed by payment of the receiver's costs and fees.  Thus, when seeking payment, a receiver looks first to the property itself.  *Fisk*, 333 Mich at 516.  If there are insufficient funds because, for example, a creditor with a superior lien is owed more than what the property is worth, then the receiver may petition the court pursuant to MCR 2.622(D) to order the party who sought the appointment of the receiver to compensate the receiver for his or her costs and fees.

23

therefore reverse the judgment of the Court of Appeals imposing on Dart the costs of the receivership and remand this case to the circuit court for entry of an order in Dart's favor consistent with this opinion.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra

S T A T E   O F   M I C H I G A N

SUPREME COURT

*In re* RECEIVERSHIP OF 11916 SOUTH
FRANCIS ROAD.

_____

NASTASSIA PRICE and ERIN DUFFY-
PRICE, Personal Representatives of the
Estate of DARRYL HOUSTON PRICE,

        Plaintiffs,

v                                                                    No. 143123

LORI JEAN KOSMALSKI and TRADE
DEVELOPMENT COMPANY, a/k/a
TRADE WORLD CORPORATION, INC.,

        Defendants,

and

Estate of RUDAFORD R. STERRETT, JR.,

        Defendant-Appellee,

and

THOMAS WOODS, Receiver,

        Appellee,

and

DART BANK,

        Intervening Defendant-
        Appellant.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the majority's conclusion that a mortgagee only waives its rights to superior priority under MCL 600.3236 if the mortgagee expressly consents to a receivership or the reordering of priorities. Rather, I would hold that a mortgagee may also waive its superior priority rights if the mortgagee acquiesces to and benefits from the receivership.

In support of its conclusion that a receiver may only obtain superior priority in relation to a mortgagee "when the mortgagee has unequivocally waived this statutory right of first priority [under MCL 600.3236]," the majority cites *Bailey v Bailey*, 262 Mich 215; 247 NW 160 (1933), and *Fisk v Fisk*, 333 Mich 513; 53 NW2d 356 (1952). *Ante* at 21. However, in my view, *Bailey* and *Fisk* provide that a waiver may also occur by way of acquiescence.[1]

In *Bailey*, a receiver was appointed for a hotel, which was subject to a mortgage. All parties involved sought to have the receiver operate the hotel during the summer of 1931, but the receiver refused unless the mortgagees consented to his borrowing money and obtaining a first lien with priority over the mortgagees. The mortgagees agreed.

---

[1] Waiver by acquiescence is well known in a variety of legal situations. See, e.g., *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007) (stating that an unambiguous deed restriction is enforced as written "unless the restriction . . . has been *waived by acquiescence*") (emphasis added); *Sampeer v Boschma*, 369 Mich 261, 265; 119 NW2d 607 (1963) ("If the action of the trial court was irregular, the irregularity was *waived by making no objection* until after the verdict was rendered.") (emphasis added; quotation marks and citation omitted); and *Smith v First United Presbyterian Church*, 333 Mich 1, 11; 52 NW2d 568 (1952) (holding that when the purchaser of real property from a subdivider was vigilant in maintaining the property in accordance with the general plan, the purchaser "*acquiesced* in the general plan . . . and *waived* any right she or her grantees would have to act outside of it") (emphasis added).

Subsequently, the real estate market collapsed, but the mortgagees did not seek to foreclose and instead cooperated with the receiver in his efforts to sell the property. No acceptable offers were received, however.

In determining whether the receiver held priority over the mortgagees for his costs, *Bailey* initially focused on the fact that the mortgagees consented to the receiver's superior priority:

> If the mortgagees had kept out of this matter, except perhaps in respect of contest of the receiver's account, there might be force in their contention that they are liable for no part of the administration costs and expenses of the receivership. *But, as stated, the bill was filed by consent.* [*Bailey*, 262 Mich at 219 (emphasis added; citation omitted).]

However, this Court also stated that even if the mortgagees had not given prior, specific consent to the receiver's priority, their conduct would nevertheless have precluded them from seeking to obtain priority over the receiver because "[t]he mortgagees dealt with the receiver promptly and in an effort to save loss to themselves by keeping the hotel a going concern, and receivership was used in an attempt to effect sale of the property." *Id.* Accordingly, because the mortgagees "availed themselves of any possible advantage of the receivership, *they will not be heard to say that the property in the hands of the receiver is not chargeable with the receiver's expense and administration costs*, even though it may result practically in a corresponding loss to them." *Id.* at 219-220 (emphasis added). This was so because "[a]dministration expenses are incurred on the theory that they benefit the parties ultimately entitled to the property." *Id.* at 220. *Bailey* was also careful to limit the scope of its holding, explaining that a court may only allow a

3

receiver's expenses to displace prior liens when the expenses are required to preserve the property and allow the property to become saleable. *Id.* at 221.

Also, in *Fisk* this Court considered a situation in which the parties had agreed to the appointment of receivers over the corporation at issue while the parties settled a dispute regarding who owned the corporation. This Court held that, when the primary purpose of a receivership is to preserve and protect the property involved in a controversy, "it logically follows that he who ultimately establishes his right to the property thus held is the one who benefits from the property having been protected and preserved." *Fisk*, 333 Mich at 516, citing *Bailey*, 262 Mich 215. *Fisk* also noted that both parties had agreed to the appointment of the receivers and, "by doing so, appellant in effect waived any complaint he might otherwise make regarding the propriety or legality of the appointment and its effect upon the question of who was to bear the receivership expenses." *Fisk*, 333 Mich at 516 (citation omitted).

In my view, *Bailey* and *Fisk* indicate that although consent by the mortgagee is one method by which a receiver may obtain superior priority, acquiescence by a mortgagee is also sufficient to grant a receiver's expenses priority over a preexisting mortgage. *Bailey* and *Fisk* supported this conclusion by reasoning that the receivership is intended to protect and preserve the property held by the receiver and because a mortgagee or an eventual owner of the receivership property benefits from the receiver's expenditures, it is proper to impose those expenses on the party that benefits. See *Bailey*, 262 Mich at 219-220 (stating that because the mortgagees "availed themselves of any possible advantage of the receivership, they will not be heard to say that the property in the hands of the receiver is not chargeable with the receiver's expense and administration

4

costs, even though it may result practically in a corresponding loss to them"). Thus, in my view, the majority incorrectly states that acquiescence by a mortgagee with knowledge of the receivership is insufficient to provide the receiver superior priority. See *ante* at 19 (claiming that this interpretation would require an "extension of the rule articulated in *Bailey* and *Fisk*"), and *ante* at 18 (claiming that this interpretation is "wholly unsupported by our jurisprudence"). Rather, *Bailey* specifically supports this conclusion.

Applying *Bailey* and *Fisk* to this case, I believe that, at a minimum, Dart Bank acquiesced to the receivership. Specifically, Dart never objected to the receiver's actions, despite its knowledge of the receiver's efforts. This Court has long recognized the inherent authority of a court of equity to appoint a receiver under appropriate circumstances, see *McDonald*, 351 Mich at 575-576, and Dart does not argue that the receivership in this case was improper. Moreover, the Court of Appeals has held that entities that are not parties to a receivership order but are nevertheless affected by the receivership order need not be served with notice under MCR 2.105(D), particularly when the affected entity receives actual notice of the order. *In re Contempt of Cornbelt Beef Corp*, 164 Mich App 114, 120; 416 NW2d 696 (1987), citing *Davis v Davis*, 137 Mich App 291, 293; 358 NW2d 6 (1984), and *Tuller v Wayne Circuit Judge*, 243 Mich 239, 243-245; 219 NW 939 (1928). Accordingly, Dart was not entitled to formal notice of the receivership.

Furthermore, although Dart was not a party to the receivership order entered on April 10, 2008, and Dart initiated a foreclosure by advertisement on April 15, 2008—before it was aware of the receivership—Dart admitted that it had received actual notice

5

of the receivership only three days later, on April 18, 2008. Moreover, the majority's notation that "'[m]ere knowing silence generally cannot constitute waiver,'" *ante* at 19 n 45, quoting *Quality Prods & Concepts Co v Nagel Precision Inc*, 469 Mich 362, 365; 666 NW2d 251 (2003), is irrelevant because Dart did not merely stand mute when it learned of the receivership. Rather, in a letter acknowledging the receivership, Dart's attorney stated that it "would be willing to work with [the receiver] . . . in terms of arranging for a sale of the property so that this mortgage can be paid." Also, Dart's subsequent interaction with the receiver during the year between its acknowledgement of the receivership and the sheriff's sale substantiates Dart's willingness to work with the receiver. Additionally, during the October 14, 2009, hearing in the trial court, Dart's attorney admitted that Dart "acquiesced to the fact that there was a receiver out there . . . ." The trial court, the receiver, and Dart agreed that the property was in terrible condition and, although the expenses of repairing it were high, they were necessary in this case. Furthermore, the receiver provided reports documenting his expenditures related to repairing the property in hopes of returning it to a saleable condition, and Dart never acted to formally challenge any specific expenditure by the receiver related to the property's repair. Thus, in my view, Dart's conduct was sufficient to establish that Dart had knowledge of and acquiesced to the receivership. Accordingly, in my view, Dart clearly engaged in "affirmative conduct" that was sufficient to show that Dart "waived a known right," *ante* at 20 n 45, just as did the parties in *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007); *Sampeer v Boschma*, 369 Mich 261, 265; 119 NW2d 607 (1963); and *Smith v First United Presbyterian Church*, 333 Mich 1, 11; 52 NW2d 568 (1952).

6

Additionally, as mortgagee, Dart benefited from the receiver's efforts to repair, preserve, and protect the property because the repairs increased the property's value. Therefore, the receiver's efforts improved Dart's chances of recovering the full amount of its mortgage when the receiver sold the property. The fact that the receiver was not able to sell the property at a suitable price does not undercut this analysis because *Bailey* held that the receiver's costs take priority "even though it may result practically in a corresponding loss to [the mortgagee]." *Bailey*, 262 Mich at 219-220. Accordingly, as stated in *Bailey*, Dart should not "be heard to say that the property in the hands of the receiver is not chargeable with the receiver's expense" when the mortgagee "availed [itself] of any possible advantage of the receivership . . . ." *Id.* at 219.[2]

---

[2] *Bailey*'s discussion of the importance of who receives the benefit of a receiver's efforts is consistent with this Court's discussion of the issue in other opinions. For example, in *Holmes v Holmes*, 265 Mich 16, 18; 251 NW 360 (1933), this Court stated that imposing responsibility for the receiver's expenses on the receivership property is appropriate when the receiver "performed valuable services" that "were beneficial" and the parties had consented to the receiver's appointment. Likewise, in *Fisk*, this Court stated that

> "[r]eceivers ordinarily have a right to compensation for their services and expenses, and such right is a strong equity, analogous to an obligation founded upon an implied contract, and is not dependent upon the mere arbitrary discretion of the court, if the appointment of the receiver was regular and his conduct has been free from exception. Such right of the receiver to compensation is a charge on the property or fund in receivership." [*Fisk*, 333 Mich at 518 (citation omitted).]

See, also, *Cohen v Cohen*, 125 Mich App 206, 215; 335 NW2d 661 (1983) (upholding a receiver's fees because the fees were not "excessive" and were "reasonable in light of the actions the receiver was required to take in order to protect the property"), and 65 Am Jur 2d, Receivers, § 220, p 777 ("The general rule is that the compensation of a receiver, where the receivership proceedings are not sought by a mortgagee, is subordinate to the lien of the mortgage, at least *where the mortgagee receives no benefit therefrom*.") (emphasis added).

7

Finally, as the ultimate owner of the property through the foreclosure process, Dart also benefited from the receiver's efforts to repair, preserve, and protect the property. This aspect of the case falls under *Fisk*'s conclusion that when the primary purpose of a receivership is to preserve and protect the property involved in a controversy, "it logically follows that he who ultimately establishes his right to the property thus held is the one who benefits from the property having been protected and preserved." *Fisk*, 333 Mich at 516. Accordingly, because Dart, as the eventual owner of the property, benefited from the receiver's efforts to repair, preserve, and protect the property in that Dart received a habitable, sellable property, I would require Dart to bear the cost of that benefit.

Thus, I would affirm the judgment of the Court of Appeals because, in my view, Dart waived its statutory right to superior priority under MCL 600.3236 because it had knowledge of the receivership, acquiesced to the receivership, and benefited from the receiver's efforts to repair, preserve, and protect the property.

Michael F. Cavanagh
Marilyn Kelly
Diane M. Hathaway

8